

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



| | | |
|---|---|---|
| UNITED STATES OF AMERICA and the STATE OF ILLINOIS, ex rel., RAYMOND POLLAK, M.D., | ) ) ) | **FILED IN CAMERA AND UNDER SEAL PURSUANT TO THE FALSE CLAIMS ACT** |
| Plaintiff, | ) ) | Judge Marvin Aspen |
| v. | ) ) ) | Case No. 99C 0710 |
| BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS and THE UNIVERSITY OF CHICAGO, | ) ) ) ) | JURY DEMANDED   JUDGE CASTILLO |
| Defendants. | ) | ~~CHIEF JUDGE ASPEN~~ |

FILED 99 FEB -4 PM E04
U.S. DISTRICT CLERK COURT
DOCKETED AUG 0 7 2003

## COMPLAINT

**COMES NOW** the plaintiff, RAYMOND POLLAK, M.D., by and through his

attorneys, THE LAW OFFICES OF LAURIE J. WASSERMAN, RONALD E. OSMAN

AND ASSOCIATES, LTD., and POTTER & SCHAFFNER, P.C., and on behalf of the

United States of America and the State of Illinois, and  complains against the BOARD

OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, and the UNIVERSITY OF

CHICAGO, as follows:

## INTRODUCTION

1.      This is an action to recover damages and civil penalties and to obtain

injunctive relief on behalf of the United States of America and the State of Illinois arising

out of false statements and claims presented and made by defendants.  Count I seeks

redress and damages for false claims made to the Federal Government by defendant

Board of Trustees of the University of Illinois (hereafter, "UICMC") and Count II against

the University of Chicago (hereafter, "U of C"), under the Federal Medicare Program.

Counts I and VII arise under the provisions of 31 U.S.C. §3729, et. seq., the False Claims Act. Count II seeks redress and damages against defendants UICMC and Count VI against the U of C for false claims under the Illinois Medicaid Program. Counts II and VI arise under the provisions of 740 ILCS 175, et. seq., the Illinois Whistleblower Reward and Protection Act (hereafter the "Illinois Whistleblower Act"). Count III arises under the Federal False Claims Act, Count IV under the Illinois Whistleblower Reward and Protection Act and Count V pursuant to the public policy of the State of Illinois against UICMC for wrongful employment actions against Dr. Pollak, including retaliation and harassment.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1367, and under 31 U.S.C. §3729 and 740 ILCS 175/4.

3. Venue is proper in this district pursuant to 28 U.S.C. §§1391(b) and (c), and §31 U.S.C. 3729(a). Defendants reside in or transact business in this District and the facts forming the basis of the Complaint occurred in this district.

4. This action is filed *in camera* and *under seal* pursuant to the requirements of 31 U.S.C. §§3729, 3730(b), and 740 ILCS 175/4 (b) and is to remain under seal for a period of at least sixty (60) days and will not be served on the Defendant until the Court so orders, to enable the Government (1) to conduct its own investigation without the knowledge of the defendant and (2) to determine whether to intervene and proceed with the action.

## PARTIES

5.     Qui Tam Relator Raymond Pollak, M.D., (hereafter "Relator"), is a citizen of the United States and a resident of the State of Illinois.

6.     As required under Section 3730 (b)(2) of the False Claims Act, and Section 175/4(b)(2) of the Illinois Whistleblower Act, Relator has furnished or will furnish to the Attorney General of the United States, the United States Attorney for the Northern District of Illinois, the Illinois Attorney General a statement contained herein of substantially all material evidence and information related to the Complaint. This Disclosure Statement supports relator's contentions that defendants have filed false claims with the Department of Health & Human Services for Medicare and Medicaid reimbursements and with the State of Illinois for Medicaid reimbursements for patients who were hospitalized without sufficient medical necessity, or were not qualified under the controlling regulations to receive in-patient, and out-patient hospital services and/or laboratory work or to obtain liver transplants.  The Disclosure Statement further supports relator's claims that he has been a victim of intensive retaliation and harassment, by UICMC and has suffered damages for protesting the fraud against the United States and the State of Illinois.

7.     Relator is an original source individual with direct and independent knowledge of the information set forth herein, and has voluntarily provided the information to the government pursuant to 31 U.S.C. §3730(e)(4)(B) and 740 ILCS 175/4.

8.     To the extent, if any, that this case is deemed to be a related action and that facts set forth herein are deemed to be the same as facts underlying an existing *qui tam* False Claims Act action pending at the time of filing of the action, as provided for in 31 U.S.C. §3730(e) or existing *qui tam*.  Illinois Whistleblower Reward and Protection Act action pending at the time of filing of this action, as prohibited in § 175/4(b)(5) of the Act, said factual allegations in common with the pending action, which would cause this to be a related cause of action, are hereby expressly excluded from this action, but only to the limited extent necessary to exclude such preemption.

9.     Furthermore, to the extent that the allegations or transactions set forth herein are the subject of a civil suit or an administrative civil money penalty proceeding in which the United States or State is already a party, if any such proceedings exist, then the allegations or transactions referred to herein which are the subject of any such civil suit or administrative civil money penalty proceeding are expressly excluded herefrom, but only for the specific time periods, specific companies, and specific allegations or transactions as necessary.

10.     Relator Raymond Pollak is a Medical Doctor.  Dr. Pollak has been licensed to practice medicine since 1977.  Commencing in 1977 and through 1984, Dr. Pollak served his residency in Surgery at the University of Illinois College of Medicine. He was subsequently promoted to the positions of Professor of Surgery; graduate faculty member in the Departments of Pathology and Anatomy;  Chief of the Transplantation Surgery Division and a representative of the UICMC to the Regional Organ Bank of Illinois ("ROBI") and was an elected member of the Membership and Professional Standards Committee of the United Network for Organ Sharing ( "UNOS").

Dr. Pollak is a national and an internationally known and respected surgeon, researcher and professor and is one of the nation's foremost experts in liver transplantation surgery, including transplantation of livers.

11.     Defendant University of Illinois Board of Trustees governs and administers the University of Illinois Hospital (hereafter "UICMC"), through the University, President (James Stukel, Ph.D), Chancellor (David Broski, Ph.D), Provosts, Deans, Chiefs of Staffs, and heads of departments. In addition to providing other medical services, UICMC operates a hospital and performs liver transplants and research on transplantation surgery. It commenced performing liver transplants in August 1985. Between 1988 and the present, the UICMC Transplant Department has performed approximately 70 liver transplants, of which about 18 were performed in the last year.

12.     Defendant UICMC is Dr. Pollak's employer.

13.     Defendant University of Chicago is a private corporation. Among other medical services, U of C operates a hospital and performs liver transplants and research on transplantation surgery. It commenced performing liver transplants in 1985. Between 1988 and the present, the U of C Transplant Department has performed approximately 60 liver transplants per year.

**OPERATIVE REGULATIONS AND LEGISLATION**

14.     In 1984, Congress passed the National Organ and Transplant Act ("NOTA"), 42 USC §273, et seq. By statute, NOTA created the Organ Procurement & Transplant Network ("OPTN"). By statute, the United States Department of Health and Human Services ("HHS") has contracted with a private entity, UNOS, to implement and operate the OPTN and a national scientific registry. UNOS collects data and has

established regulations to allocate all organs, including livers, to waiting patients, based upon the patient's medical urgency status. 42 U.S.C. §274(a) and (b).

15.     In order to implement the Federal statutory mandate that livers be equitably distributed and allocated on a nationwide basis, HHS has designated the creation of a number of organ procurement organizations. Pursuant to statute, HHS has designated the Regional Organ Bank of Illinois (ROBI), a private not-for-profit, federally financed corporation to serve the needs of the citizens of most of Illinois and Northwestern Indiana.  ROBI is required to be a member of UNOS and to follow UNOS rules relating to the equitable distribution of donated organs (including the liver) to waiting patients in ROBI's service area.

16.     Pursuant to NOTA, HHS has contracted with UNOS to implement the provisions of the Act, operate a nationwide Organ Procurement and Transplant Network (OPTN).  UNOS is required under its contract with HHS and the NOTA, to perform certain functions, including the operation of the OPTN network, the creation of a scientific registry, and to report on transplants nationwide via annual reports. UNOS is charged with the mandate of accrediting transplant programs, including those at defendants UICMC and U of C.

17.     UNOS is mandated to secure compliance with its regulations and the NOTA, by the transplant programs, including the UICMC and U of C.  UNOS can discipline hospitals such as UICMC and U OF C.  Upon notification of disciplinary action by UNOS, the Secretary of HHS may debar a hospital like UICMC and U of C from performing transplants.  In the event a provider such as UICMC is debarred, it would not be entitled to bill Medicare or Medicaid for liver transplantation or related

hospitalizations or procedures, nor would the United States Government or the State of
Illinois be required to pay claims submitted by a debarred provider.

18.     Defendants UICMC and U of C are members of ROBI and UNOS and are
required to be members of ROBI and UNOS in order to receive medicare
reimbursements for transplants.

19.     UICMC and U of C and its transplant programs have entered into
contracts with UNOS, which state in relevant part that they will abide by the UNOS
regulations and NOTA, and will engage in no activities to defraud the government.

20.     In 1986, Congress amended Section 1138 of Social Security Act to
provide in relevant part that Medicare and Medicaid reimbursement to hospitals such as
UICMC and U of C was conditional upon the transplant hospitals' compliance with
OPTN, which includes UNOS and ROBI. See 42 U.S.C. §1320b-8(a)(1)(B); 42 CFR
Part 482.12 and 485.301, 305. Pursuant to these 1988 amendments to NOTA, the
OPTN must establish and secure compliance with medical criteria for liver allocation. 42
U.S.C. §274(b)(2)(B).

21.     Defendants UICMC and U of C have agreed to abide by the mandates of
NOTA and Section 1138 of the Social Security Act, are registered with UNOS and ROBI
and have agreed to abide by the UNOS and ROBI regulations and liver allocation
algorithms.[1]

_____

[1]     Not all of the UNOS regulations enacted pursuant to Section 1138 of the
Social Security Act have been formally adopted by the Department of Health and
Human Services. Whether the UNOS regulations are "voluntary" with transplant
institutions until adopted by HHS, is irrelevant to relator's Complaint insofar as UICMC
and U of C have agreed to be bound by NOTA, and UNOS and ROBI regulations and
bylaws, and have accepted federal and state reimbursement pursuant to its
certifications of compliance with all operative regulations.

22.     On or about January 29, 1998, the Health Care Financing Administration (HCFA) approved "payment by Medicare for liver transplants," effective that date to defendant UICMC, based upon defendant's representations that it was and would remain in compliance with the operative laws, rules and regulations governing liver transplantation. As a result of the HCFA certification, the UICMC agreed with respect to billing, that it would "limit Medicare to accepted conditions as defined in the Federal Register (Vol. 56, No. 71/Friday April 12, 1991/pages 15006 through 15018)."

23.     UICMC and U of C are reimbursed approximately $250,000 per transplantation, for certain patients, from Medicare and/or Medicaid, inclusive of the surgery, in-patient hospitalization, out patient services and laboratory charges.

## FALSE HOSPITALIZATIONS AND FALSE CLAIMS

24.     In order to secure federal and state reimbursements for in-patient and out-patient hospitalization and attendant laboratory and other services, defendants have placed patients in the hospital and their Intensive Care Units for extended periods of time, although such hospitalizations were not medically necessary or without regard to the medical necessity. Since at least 1995, defendants have falsely diagnosed and hospitalized patients; and falsely up-coded their medical conditions, including  to liver status 1  (Confined in the intensive care unit and likely to die in seven days) or liver status 2 (extremely ill with chronic disease and hospital bound).

25.     The following examples illustrate some, but not all the types of medically unnecessary or fraudulent hospitalizations and false claims by defendant.

   a.     Patient DN, was admitted to the UICMC-ICU in January 1996. He was admitted without sufficient medical necessity, and contrary to the medical records, was falsely up-coded to liver status 1. During his hospitalization, patient DN exercised regularly.

b.     Patient MA was admitted to the UICMC-ICU on two separate occasions, for over two months in 1996. She was admitted without sufficient medical necessity, and contrary to the medical records, was falsely up-coded to liver status 1. During her hospital stay, MA dressed up and performed as a clown in the public lobby, and was allowed to leave the UICMC on exit passes.

c.     Patient CP had no urgency criteria rated. She was admitted to the UICMC-ICU in June 1997 without sufficient medical necessity, and contrary to the medical records, was falsely up-coded to liver status 1 and/or status 2A. During her weeks in the UICMC-ICU, she left the facility exit passes.

d.     Patient JJ was admitted to the UICMC in November 1997, with "stable cirrhosis." He was admitted without sufficient medical necessity, and contrary to the medical records, was falsely up-coded to liver status 1. During the time period that JJ was falsely upgraded to "likely to die in seven (7) days" status, he left the UICMC-ICU on exit passes.

e.     Patient VA was admitted to UICMC-ICU in January 1998 for over five weeks, although he had "stable cirrhosis." He was admitted without sufficient medical necessity, and contrary to the medical records, was falsely up-coded to liver status 2A. He remains untransplanted.

26.     The above instances are but a few of the cases which illustrate defendants' schemes and plans to falsely hospitalize patients, falsely upgrade their listing status and misrepresent their medical condition or necessity for livers in order to secure payment based on these false or fraudulent claims from the government.

27.     In 1996, Dr. Pollak began to protest to his superiors at UICMC and other UNOS approved liver transplant programs in Chicago, that Chicago liver transplant programs were subverting the UNOS approved liver allocation scheme, by falsely upgrading or "fudging" liver patients criteria in order to perform liver transplants and to gain a competitive advantage. "Fudging" on the liver medical criteria in order to justify medical severity to perform liver transplants was also referred to by UICMC senior administrators as "the Chicago Way."

28.     In March 1997, the senior administrators of UICMC (Drs. Moss, Rice, Chamberlin, Layden and Abcarian) and counsel for UICMC (Bruce Kite) asked to meet with Dr. Pollak.  They asked him what the "downside" might be to using the "Chicago Way" of listing potential liver transplant recipients.  Dr. Pollak informed them that there was pressure to "fudge" and falsely upgrade waiting liver patients in Chicago, including at UICMC.

29.     In May 1997, senior UICMC administrators again requested to meet with Dr. Pollak to discuss the liver transplant program.  Dr. Pollak made a presentation on the history of liver allocation problems in the U.S., and the governing laws and rules based on medical urgency.  He was asked by the UICMC deans (Drs. Rice, Chamberlin and Moss the presence of Dr. Abcarian) to again explain the "downside" of UICMC falsely upgrading the medical urgency of waiting patients in order to gain a competitive advantage over other liver patients and transplant programs in the City.  Following the meeting, Dr. Pollak announced to the Department Head, Dr. Abcarian that he would not participate in or condone any fraudulent conduct in the operation of the liver program.

30.     On or about June 1997, following his request that the UICMC investigate fraud in the liver transplant program, Dr. Pollak was issued a written disciplinary letter for "virtual insubordination," by Dean Gerald Moss.  Dr. Pollak's insubordination arose in part, from his refusal to follow the instructions of UICMC Dean William Chamberlin, M.D., to conduct the liver program in "the Chicago Way."'

31.     Between July 1997 and April 1998, Dr. Pollak continued to report to defendant UICMC that UICMC liver transplant physicians were falsely upgrading and hospitalizing patients who did not meet the medical criteria for their listed status.

32.     On or about March 20, 1998, Dr. Pollak met with Sidney Mitchell, the CEO

of UICMC, and UICMC counsel Bruce Kite, at their request.  Dr. Pollak described to

CEO Mitchell and to Attorney Kite the following: instances in which UICMC had

subverted the UNOS liver allocation algorithm by falsely upgrading the medical status of

waiting liver patients; and, falsely placed patients in the hospital and intensive care

units, and sometimes for months at a time, waiting for a liver, and then not being

transplanted.

33.     Prior to and following Dr. Pollak's meeting with UICMC CEO Mitchell as

set forth in paragraph 32, above, relator was told other things,  that the Senior

administration at UICMC wanted him to "back off or else"; that he should "stop writing

letters"; stop complaining about fraud; that he did not understand the "economic

imperatives" faced by UICMC; that he must give up the battle because it would

negatively impact his career; and finally, that by "upping the ante" with the CEO, and

referring to UICMC fraud in the liver transplant program, he should agree to an "out of

cycle sabbatical" or be forced to step down as Chief of Transplantation.

34.     By letter dated April 2, 1998, shortly after relator's meeting with UICMC

CEO Sidney Mitchell, and Attorney Kite, defendant UICMC stripped Dr. Pollak of all

duties as Chief of the Division of Transplant Surgery and as Medical Director of the

Transplant ICU.  Defendant UICMC via its Department head Herand Abcarian, M.D.,

stated its reasons for the demotion were because Dr. Pollak had continued to "raise the

ante" in regards to the liver transplant program at UICIC and "they want you out."

35.     On or about May 27, 1998, Dr. Pollack met with UICMC-UI President

James J. Stukel, Ph.D., and Trustee Geoffrey Gindorf, M.D., at their requests.  Dr.

Pollak made a presentation to President Stukel and Trustee Gindorf on the history and overview of the operative regulations and guidelines governing the liver transplant program. He presented to President Stukel and Trustee Gindorf patient charts, records and data that substantiated defendant UICMC's false and fraudulent billings to the government.

36.    Between April 1998 through the present, defendant has refused to allow relator the opportunity to perform liver transplants.

37.    In October 1998, UICMC removed Dr. Pollak as the UICMC representative to UNOS and has sought to remove him from the ROBI Board of Directors.

**COUNT I**
**(VIOLATION OF THE FALSE CLAIMS ACT AGAINST UICMC)**

38.    Relator realleges and repeats paragraphs 1 through 37 as if fully set forth herein.

39.    Defendant UICMC is a government contractor, and has acted to defraud the United States by submitting and obtaining reimbursements under the Medicare programs (1) for patients who were falsely upgraded to a Status 1 or Status 2A liver condition, although the medical evidence was to the contrary; (2) for patients who were hospitalized for extended periods of time or to await a liver transplantation, although said hospitalization was not medically necessary, or was without regard to its medical necessity, and (3) for patients who received liver transplants, although said patients were not eligible for transplantation under the governing federal regulations.

40.  31 U.S.C. § 3729 of the False Claims Act states as follows:

Liability for certain acts.  Any person who -

a.  knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;

b.  knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;

c.  conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;

d.  has possession, custody, or control of property or money used, or to be used, by the Government and, intending to defraud the Government or willfully to conceal the property, delivers, or causes to be delivered, less property than the amount for which the person receives a certificate or receipt;

e.  authorized to make or deliver a document certifying receipt of property used, or to be used, by the Government and, intending to defraud the Government, makes or delivers the receipt without completely knowing that the information on the receipt is true;

f.  knowingly buys, or receives a pledge of an obligation or debt, public property from an officer or employee of the Government, or a member of the Armed Forces, who lawfully may not sell or pledge the property; or

g.  knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government,

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person, except ....

41.  By virtue of the acts described above, Defendant UICMC knowingly submitted or caused to be submitted false or fraudulent claims for payment of Medicare benefits.

42.    By virtue of the acts described above, Defendant UICMC knowingly made, used or caused to be made or used false statements to obtain government payment for false and fraudulent claims.

43.    Defendant UICMC has not notified the United States Government of the violation of the False Claims Act.

44.    The United States, unaware of the falsity of the records, statements or claims made by Defendant UICMC has paid Defendant UICMC for claims that would otherwise not have been allowed.

45.    By reason of these payments, the United States has been damaged, in a substantial amount, since at least late 1995.

WHEREFORE, the United States of America, by the Relator, prays this Court give judgment in his favor and against Defendant, Board of Trustees of the University of Illinois on Count I and issue orders in accordance with the False Claims Act, 31 U.S.C. §3729 et seq., specifically;

a.    Order Defendant to cease and desist from violating the False Claims Act, 31 U.S.C. §3729 et seq.;

b.    Order Defendant to pay a compensatory amount equal to three times the amount of damages the United States of America has sustained for each false claim submitted by Defendant, plus a civil penalty of $10,000.00 per false claim and the costs of this action pursuant to 31 U.S.C. §3729(a);

c.    Order Defendant to pay the Relator's reasonable costs and expenses, including reasonable attorneys' fees, pursuant to 31 U.S.C. §3730(d)(1);

d.    Order that Relator be awarded the statutory percentage of the amount received by the government pursuant to 31 U.S.C. §3730(d)(1); and

e.    Order such other and further relief as this Court deems just and proper.

## COUNT II
## (VIOLATION OF THE ILLINOIS WHISTLEBLOWER
## REWARD AND PROTECTION ACT AGAINST UICMC)

46.    Relator realleges and repeats paragraphs 1 through 37 as if fully set forth herein.

47.    Defendant UICMC is a government contractor, and has acted to defraud the State of Illinois by submitting and obtaining reimbursements under the Medicaid programs (1) for patients who were falsely upgraded to a Status 1 or Status 2A liver condition, although the medical evidence was to the contrary; (2) for patients who were hospitalized for extended periods of time or to await a liver transplantation, although said hospitalization was not medically necessary, or was without regard to its medical necessity, and (3) for patients who received liver transplants, although said patients were not eligible for transplantation under the governing regulations.

48.    740 ILCS 175/3 (a) of the Whistleblower Reward and Protection Act states as follows:

Liability for certain acts.  Any person who-

a.    knowingly presents, or causes to be presented, to an officer or employee of the State or a member of the Guard a false or fraudulent claim for payment or approval;

b.    knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State;

c.    conspires to defraud the State by getting a false or fraudulent claim allowed or paid;

d.    has possession, custody, or control of property or money used, or to be used, by the State and, intending to defraud the State or willfully to conceal the property, delivers, or causes to be delivered, less property than the amount for which the person receives a certificate or receipt;

e. authorized to make or deliver a document certifying receipt of property used, or to be used, by the State and, intending to defraud the State, makes or delivers the receipt without completely knowing that the information on the receipt is true;

f. knowingly buys, or receives a pledge or an obligation or debt, public property from an officer or employee of the State, or a member of the Armed Forces, who lawfully may not sell or pledge the property; or

g. knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the State,

is liable to the State for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the State sustains because of the act of that person. A person violating this subsection (a) shall also be liable to the State for the costs of a civil action brought to recover any such penalty or damages.

49. By virtue of the acts described above, Defendant UICMC knowingly made, used or caused to be made or used false statements to obtain payment of Medicaid benefits from the State of Illinois.

50. Defendant UICMC has not notified the State of Illinois of the violation of the IWRPA.

51. The State of Illinois, unaware of the falsity of the records, statements or claims made by Defendant UICMC, has paid Defendant UICMC for claims that otherwise would not have been allowed.

52. By reason of these payments made by IDPA. The State of Illinois has been damaged, since at least 1995, and continues to be damaged in a substantial amount.

**WHEREFORE,** the State of Illinois, by the Relator prays this Court give judgment in his favor and against Defendant on Count II and issue orders in accordance with the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1 et seq. specifically;

a.     Order Defendant to cease and desist from violating the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1 et seq;

b.     Order Defendant to pay a compensatory amount equal to three times the amount of damages the State of Illinois has sustained for each false claim submitted by Defendant plus a civil penalty of $10,000 per false claim and the costs of this action pursuant to 740 ILCS 175/3(a);

c.     Order Defendant to pay the Attorney General's expenses, including reasonable attorneys' fees and cost, pursuant to 740 ILCS 175/4(d)(1);

d.     Order Defendant pay the Relator's reasonable costs and expenses, including reasonable attorneys' fees, pursuant to 740 ILCS 175/4(d)(1);

e.     That Relator be awarded the statutory percentage of the amount received by the government pursuant to 740 ILCS 175/4(d)(1); and,

f.     Such other and further relief as this Court deems just and proper.

## COUNT III
### (UNLAWFUL RETALIATION AGAINST UICMC UNDER THE FALSE CLAIMS ACT)

53.     Dr. Pollak realleges and repeats paragraphs 1 through 52 as if fully set forth herein.

54.     Dr. Pollak has original and direct knowledge of the aforesaid illegal practices during the course of his employment at UICMC. Since bringing defendant UICMC's false and fraudulent conduct to light, he has been subjected to harassment, retaliation and discrimination by UICMC, and has suffered emotional distress, all of which are continuing to date.

**WHEREFORE,** Relator prays this Court give judgment in his favor and against Defendant on Count III and, and specifically;

a.     Grant him such relief as is appropriate under the provisions of 31 U.S.C. Section 3730(h) of the False Claims Act;

b.  Issue an injunction to permanently restrain and enjoin UICMC and its agents, employees, and administrators from harassing, retaliating or otherwise discriminating against him;

c.  Make him whole for the damages and financial losses suffered, including punitive and compensatory damages;

d.  Order UICMC to restore the status quo ante, restoring him to all positions he held prior to March 20, 1998;

e.  That Relator be awarded his attorneys' fees and costs;

f.  Any other such relief as is fair and equitable.

## COUNT IV
## (UNLAWFUL RETALIATION AGAINST UICMC UNDER THE ILLINOIS WHISTLEBLOWER REWARD AND PROTECTION ACT)

55.  Dr. Pollak realleges and repeats paragraphs 1 through 52 as if fully set forth herein.

56.  Dr. Pollak has original and direct knowledge of the aforesaid illegal practices during the course of his employment at UICMC. Since bringing defendant's false and fraudulent conduct to light, he has been subjected to harassment, retaliation and discrimination by UICMC, and suffered emotional distress, all of which are continuing to date.

WHEREFORE, Dr. Pollak requests this Court enter an order under Count IV of this Complaint against UICMC, as follows:

a.  To grant him such relief as is appropriate under the provisions of 740 ILCS 175 et seq.

b.  To issue an injunction to restrain and enjoin the defendant from harassing, retaliating or otherwise discriminating against him;

c.  To make him whole for the damages and financial losses suffered, including punitive and compensatory damages;

d.     An order restoring the status quo ante, restoring him to all positions he held prior to March 20, 1998;

e.     That Relator be awarded his attorneys' fees and costs;

f.     Any such other relief as is fair and equitable.

## COUNT V
### (UNLAWFUL RETALIATION AGAINST UICMC IN VIOLATION OF THE PUBLIC POLICY OF THE STATE OF ILLINOIS)

57.     Relator realleges and repeats paragraphs 1 through 52 as if fully set forth herein.

58.     It is the public policy of the State of Illinois to prevent fraud and false claims in the administration of programs by transplant programs, including state owned programs and hospitals such as defendant UICMC.

59.     Relator Dr. Pollak has acted to protect the people of the State of Illinois from the aforesaid illegal practices and as a result, he has been subjected to harassment, retaliation and discrimination, loss of position and wages, all of which are continuing to date.

**WHEREFORE**, Relator prays this Court give judgment in his favor and against Defendant on Count V and specifically;

a.     Issue an injunction to permanently restrain and enjoin UICMC and its agents, employees, and administrators from harassing, retaliating or otherwise discriminating against him;

b.     Make him whole for the damages and financial losses suffered, including punitive and compensatory damages;

c.     Order UICMC to restore the status quo ante, restoring him to all positions he held prior to March 20, 1998;

d.     Any other such relief as is fair and equitable.

## COUNT VI
## (VIOLATION OF THE FALSE CLAIMS ACT AGAINST UNIVERSITY OF CHICAGO)

60.     Relator realleges and repeats paragraphs 1 through 37 as if fully set forth herein.

61.     Defendant UNIVERSITY OF CHICAGO is a government contractor, and has acted to defraud the United States by submitting and obtaining reimbursements under the Medicare programs (1) for patients who were falsely upgraded to a Status 1 or Status 2A liver condition, although the medical evidence was to the contrary; (2) for patients who were hospitalized for extended periods of time or to await a liver transplantation, although said hospitalization was not medically necessary, or was without regard to its medical necessity, and (3) for patients who received liver transplants, although said patients were not eligible for transplantation under the governing federal regulations.

62.     That 31 U.S.C. § 3729 of the False Claims Act states as follows: Liability for certain acts.  Any person who -

a.     knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;

b.     knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;

c.     conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;

d.     has possession, custody, or control of property or money used, or to be used, by the Government and, intending to defraud the Government or willfully to conceal the property, delivers, or causes to be delivered, less property than the amount for which the person receives a certificate or receipt;

e.  authorized to make or deliver a document certifying receipt of property used, or to be used, by the Government and, intending to defraud the Government, makes or delivers the receipt without completely knowing that the information on the receipt is true;

f.  knowingly buys, or receives a pledge of an obligation or debt, public property from an officer or employee of the Government, or a member of the Armed Forces, who lawfully may not sell or pledge the property; or

g.  knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government,

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person, except ....

63.  By virtue of the acts described above, Defendant U of C knowingly submitted or caused to be submitted false or fraudulent claims for payment of Medicare benefits.

64.  By virtue of the acts described above, Defendant U of C knowingly made, used or cause to be made or used false statements to obtain government payment for false and fraudulent claims.

65.  Defendant U of C has not notified the United States Government of the violation of the False Claims Act.

66.  The United States, unaware of the falsity of the records, statements or claims made by Defendant U of C, has paid Defendant U of C for claims that would otherwise not have been allowed.

67.  By reason of these payments, the United States has been damaged, since at least late 1995.

**WHEREFORE**, the United States of America, by the Relator, prays this Court give judgment in his favor and against Defendant, University of Chicago under Count VI, and issue orders in accordance with the False Claims Act, 31 U.S.C. § 3729 et seq., specifically;

a.  Order Defendant to cease and desist from violating the False Claims Act, 31 U.S.C. § 3729 et seq.;

b.  Order Defendant to pay a compensatory amount equal to three times the amount of damages the United States of America has sustained for each false claim submitted by Defendant, plus a civil penalty of $10,000.00 per false claim and the costs of this action pursuant to 31 U.S.C. § 3729(a);

c.  Order Defendant to pay the Relators' reasonable costs and expenses, including reasonable attorneys fees, pursuant to 31 U.S.C. § 3730(d)(1);

d.  Order that Relator be awarded the statutory percentage of the amount received by the government pursuant to 31 U.S.C. § 3730(d)(1); and

e.  Order such other and further relief as this Court deems just and proper.

### COUNT VII
### (VIOLATION OF THE ILLINOIS WHISTLEBLOWER
### REWARD AND PROTECTION ACT AGAINST UNIVERSITY OF CHICAGO)

68.  Relator realleges and repeats paragraphs 1 through 37 as if fully set forth herein.

69.  Defendant U of C is a government contractor, and has acted to defraud the State of Illinois by submitting and obtaining reimbursements under the Medicaid programs (1) for patients who were falsely upgraded to a Status 1 or Status 2A liver condition, although the medical evidence was to the contrary; (2) for patients who were hospitalized for extended periods of time or to await a liver transplantation, although said hospitalization was not medically necessary, or was without regard to its medical

necessity, and (3) for patients who received liver transplants, although said patients were not eligible for transplantation under the governing federal regulations.

70.     740 ILCS 175/3 (a) of the Whistleblower Reward Act states as follows:

Liability for certain acts. Any person who-

a.      knowingly presents, or causes to be presented, to an officer or employee of the State or a member of the Guard a false or fraudulent claim for payment or approval;

b.      knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State;

c.      conspires to defraud the State by getting a false or fraudulent claim allowed or paid;

d.      has possession, custody, or control of property or money used, or to be used, by the State and, intending to defraud the State or willfully to conceal the property, delivers, or causes to be delivered, less property than the amount for which the person receives a certificate or receipt;

e.      authorized to make or deliver a document certifying receipt of property used, or to be used, by the State and, intending to defraud the State, makes or delivers the receipt without completely knowing that the information on the receipt is true;

f.      knowingly buys, or receives a pledge or an obligation or debt, public property from an officer or employee of the State, or a member of the Armed Forces, who lawfully may not sell or pledge the property; or

g.      knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the State,

is liable to the State for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the State sustains because of the act of that person. A person violating this subsection (a) shall also be liable to the State for the costs of a civil action brought to recover any such penalty or damages.

71. By virtue of the acts described above, Defendant knowingly made, used or caused to be made or used false statements to obtain payment of Medicaid benefits from the State of Illinois.

72. Defendant U of C has not notified the State of Illinois of the violation of the IWRPA.

73. The State of Illinois, unaware of the falsity of the records, statements or claims made by Defendant U of C, has paid Defendant U of C for claims that otherwise would not have been allowed.

74. By reason of these payments made by IDPA, the State of Illinois has been damaged, since at least 1995, and continues to be damaged in a substantial amount.

**WHEREFORE,** the State of Illinois, by the Relator prays this Court give judgment in his favor and against Defendant U of C on Count VII and issue orders in accordance with the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1 et seq. specifically;

a. Order Defendant to cease and desist from violating the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1 et seq;

b. Order Defendant to pay a compensatory amount equal to three times the amount of damages the State of Illinois has sustained for each false claim submitted by Defendant plus a civil penalty of $10,000 per false claim and the costs of this action pursuant to 740 ILCS 175/3(a);

c. Order Defendant to pay the Attorney General's expenses, including reasonable attorneys' fees and cost, pursuant to 740 ILCS 175/4(d)(1);

d. Order Defendant pay the Relator's reasonable costs and expenses, including reasonable attorneys' fees, pursuant to 740 ILCS 175/4(d)(1);

e. That Relator be awarded the statutory percentage of the amount received by the government pursuant to 740 ILCS 175/4(d)(1); and,

f.     Such other and further relief as this Court deems just and proper.

UNITED STATES OF AMERICA and the STATE
OF ILLINOIS, ex rel,

_____
One of Relator's Attorneys

Laurie Wasserman, Esq. #3124845
9933 Lawler Avenue, Suite 321
Skokie, IL. 60077
(847) 674-7324

Robin B. Potter, Esq. #3123932
POTTER & SCHAFFNER, P.C.
30 North LaSalle Street, Suite 1724
Chicago, IL 60602
(312) 759-2500

Ronald E. Osman, Esq. #3124845
Ronald E. Osman & Associates
1602 W. Kimmel
Marion, Illinois 62959
(618) 997-5151

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and the STATE OF ILLINOIS, ex rel., RAYMOND POLLAK, M.D., | ) ) ) ) | **FILED IN CAMERA AND UNDER SEAL PURSUANT TO THE FALSE CLAIMS ACT** |
| Plaintiff, | ) ) | Judge Marvin Aspen |
| v. | ) ) | Case No. |
| BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS and THE UNIVERSITY OF CHICAGO, | ) ) ) ) | JURY DEMANDED |
| Defendants. | ) | |

## COMPLAINT

**COMES NOW** the plaintiff, RAYMOND POLLAK, M.D., by and through his attorneys, THE LAW OFFICES OF LAURIE J. WASSERMAN, RONALD E. OSMAN AND ASSOCIATES, LTD., and POTTER & SCHAFFNER, P.C., and on behalf of the United States of America and the State of Illinois, and complains against the BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, and the UNIVERSITY OF CHICAGO, as follows:

## INTRODUCTION

1.      This is an action to recover damages and civil penalties and to obtain injunctive relief on behalf of the United States of America and the State of Illinois arising out of false statements and claims presented and made by defendants. Count I seeks redress and damages for false claims made to the Federal Government by defendant Board of Trustees of the University of Illinois (hereafter, "UICMC") and Count II against the University of Chicago (hereafter, "U of C"), under the Federal Medicare Program.

Y:\CASES\employment\Pollak.ray\pleadings\COMPLAIN.FIN.wpd
February 3, 1999/syh

Counts I and VII arise under the provisions of 31 U.S.C. §3729, et. seq., the False

Claims Act. Count II seeks redress and damages against defendants UICMC and

Count VI against the U of C for false claims under the Illinois Medicaid Program.

Counts II and VI arise under the provisions of 740 ILCS 175, et. seq., the Illinois

Whistleblower Reward and Protection Act (hereafter the "Illinois Whistleblower Act").

Count III arises under the Federal False Claims Act, Count IV under the Illinois

Whistleblower Reward and Protection Act and Count V pursuant to the public policy of

the State of Illinois against UICMC for wrongful employment actions against Dr. Pollak,

including retaliation and harassment.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28

U.S.C. §§1331, 1367, and under 31 U.S.C. §3729 and 740 ILCS 175/4.

3. Venue is proper in this district pursuant to 28 U.S.C. §§1391(b) and (c),

and §31 U.S.C. 3729(a). Defendants reside in or transact business in this District and

the facts forming the basis of the Complaint occurred in this district.

4. This action is filed *in camera* and *under seal* pursuant to the requirements

of 31 U.S.C. §§3729, 3730(b), and 740 ILCS 175/4 (b) and is to remain under seal for a

period of at least sixty (60) days and will not be served on the Defendant until the Court

so orders, to enable the Government (1) to conduct its own investigation without the

knowledge of the defendant and (2) to determine whether to intervene and proceed with

the action.

**PARTIES**

      5.     Qui Tam Relator Raymond Pollak, M.D., (hereafter "Relator"), is a citizen of the United States and a resident of the State of Illinois.

      6.     As required under Section 3730 (b)(2) of the False Claims Act, and Section 175/4(b)(2) of the Illinois Whistleblower Act, Relator has furnished or will furnish to the Attorney General of the United States, the United States Attorney for the Northern District of Illinois, the Illinois Attorney General a statement contained herein of substantially all material evidence and information related to the Complaint. This Disclosure Statement supports relator's contentions that defendants have filed false claims with the Department of Health & Human Services for Medicare and Medicaid reimbursements and with the State of Illinois for Medicaid reimbursements for patients who were hospitalized without sufficient medical necessity, or were not qualified under the controlling regulations to receive in-patient, and out-patient hospital services and/or laboratory work or to obtain liver transplants. The Disclosure Statement further supports relator's claims that he has been a victim of intensive retaliation and harassment, by UICMC and has suffered damages for protesting the fraud against the United States and the State of Illinois.

      7.     Relator is an original source individual with direct and independent knowledge of the information set forth herein, and has voluntarily provided the information to the government pursuant to 31 U.S.C. §3730(e)(4)(B) and 740 ILCS 175/4.

8.      To the extent, if any, that this case is deemed to be a related action and that facts set forth herein are deemed to be the same as facts underlying an existing *qui tam* False Claims Act action pending at the time of filing of the action, as provided for in 31 U.S.C. §3730(e) or existing *qui tam*.  Illinois Whistleblower Reward and Protection Act action pending at the time of filing of this action, as prohibited in § 175/4(b)(5) of the Act, said factual allegations in common with the pending action, which would cause this to be a related cause of action, are hereby expressly excluded from this action, but only to the limited extent necessary to exclude such preemption.

9.      Furthermore, to the extent that the allegations or transactions set forth herein are the subject of a civil suit or an administrative civil money penalty proceeding in which the United States or State is already a party, if any such proceedings exist, then the allegations or transactions referred to herein which are the subject of any such civil suit or administrative civil money penalty proceeding are expressly excluded herefrom, but only for the specific time periods, specific companies, and specific allegations or transactions as necessary.

10.     Relator Raymond Pollak is a Medical Doctor.  Dr. Pollak has been licensed to practice medicine since 1977.  Commencing in 1977 and through 1984, Dr. Pollak served his residency in Surgery at the University of Illinois College of Medicine. He was subsequently promoted to the positions of Professor of Surgery; graduate faculty member in the Departments of Pathology and Anatomy;  Chief of the Transplantation Surgery Division and a representative of the UICMC to the Regional Organ Bank of Illinois ("ROBI") and was an elected member of the Membership and Professional Standards Committee of the United Network for Organ Sharing ( "UNOS").

Dr. Pollak is a national and an internationally known and respected surgeon, researcher and professor and is one of the nation's foremost experts in liver transplantation surgery, including transplantation of livers.

11.    Defendant University of Illinois Board of Trustees governs and administers the University of Illinois Hospital (hereafter "UICMC"), through the University, President (James Stukel, Ph.D), Chancellor (David Broski, Ph.D), Provosts, Deans, Chiefs of Staffs, and heads of departments.  In addition to providing other medical services, UICMC operates a hospital and performs liver transplants and research on transplantation surgery. It commenced performing liver transplants in August 1985. Between 1988 and the present, the UICMC Transplant Department has performed approximately 70 liver transplants, of which about 18 were performed in the last year.

12.    Defendant UICMC is Dr. Pollak's employer.

13.    Defendant University of Chicago is a private corporation.  Among other medical services, U of C operates a hospital and performs liver transplants and research on transplantation surgery. It commenced performing liver transplants in 1985. Between 1988 and the present, the U of C Transplant Department has performed approximately 60 liver transplants per year.

**OPERATIVE REGULATIONS AND LEGISLATION**

14.    In 1984, Congress passed the National Organ and Transplant Act ("NOTA"), 42 USC §273, et seq.  By statute, NOTA created the Organ Procurement & Transplant Network ("OPTN").  By statute, the United States Department of Health and Human Services ("HHS") has contracted with a private entity, UNOS, to implement and operate the OPTN and a national scientific registry.  UNOS collects data and has

established regulations to allocate all organs, including livers, to waiting patients, based upon the patient's medical urgency status. 42 U.S.C. §274(a) and (b).

15.     In order to implement the Federal statutory mandate that livers be equitably distributed and allocated on a nationwide basis, HHS has designated the creation of a number of organ procurement organizations.  Pursuant to statute, HHS has designated the Regional Organ Bank of Illinois (ROBI), a private not-for-profit, federally financed corporation to serve the needs of the citizens of most of Illinois and Northwestern Indiana.   ROBI is required to be a member of UNOS and to follow UNOS rules relating to the equitable distribution of donated organs (including the liver) to waiting patients in ROBI's service area.

16.     Pursuant to NOTA, HHS has contracted with UNOS to implement the provisions of the Act, operate a nationwide Organ Procurement and Transplant Network (OPTN).  UNOS is required under its contract with HHS and the NOTA, to perform certain functions, including the operation of the OPTN network, the creation of a scientific registry, and to report on transplants nationwide via annual reports. UNOS is charged with the mandate of accrediting transplant programs, including those at defendants UICMC and U of C.

17.     UNOS is mandated to secure compliance with its regulations and the NOTA, by the transplant programs, including the UICMC and U of C.  UNOS can discipline hospitals such as UICMC and U OF C.  Upon notification of disciplinary action by UNOS, the Secretary of HHS may debar a hospital like UICMC and U of C from performing transplants.  In the event a provider such as UICMC is debarred, it would not be entitled to bill Medicare or Medicaid for liver transplantation or related

hospitalizations or procedures, nor would the United States Government or the State of Illinois be required to pay claims submitted by a debarred provider.

18.    Defendants UICMC and U of C are members of ROBI and UNOS and are required to be members of ROBI and UNOS in order to receive medicare reimbursements for transplants.

19.    UICMC and U of C and its transplant programs have entered into contracts with UNOS, which state in relevant part that they will abide by the UNOS regulations and NOTA, and will engage in no activities to defraud the government.

20.    In 1986, Congress amended Section 1138 of Social Security Act to provide in relevant part that Medicare and Medicaid reimbursement to hospitals such as UICMC and U of C was conditional upon the transplant hospitals' compliance with OPTN, which includes UNOS and ROBI. See 42 U.S.C. §1320b-8(a)(1)(B); 42 CFR Part 482.12 and 485.301, 305. Pursuant to these 1988 amendments to NOTA, the OPTN must establish and secure compliance with medical criteria for liver allocation. 42 U.S.C. §274(b)(2)(B).

21.    Defendants UICMC and U of C have agreed to abide by the mandates of NOTA and Section 1138 of the Social Security Act, are registered with UNOS and ROBI and have agreed to abide by the UNOS and ROBI regulations and liver allocation algorithms.[1/]

---

[1/]    Not all of the UNOS regulations enacted pursuant to Section 1138 of the Social Security Act have been formally adopted by the Department of Health and Human Services. Whether the UNOS regulations are "voluntary" with transplant institutions until adopted by HHS, is irrelevant to relator's Complaint insofar as UICMC and U of C have agreed to be bound by NOTA, and UNOS and ROBI regulations and bylaws, and have accepted federal and state reimbursement pursuant to its certifications of compliance with all operative regulations.

22.     On or about January 29, 1998, the Health Care Financing Administration (HCFA) approved "payment by Medicare for liver transplants," effective that date to defendant UICMC, based upon defendant's representations that it was and would remain in compliance with the operative laws, rules and regulations governing liver transplantation.  As a result of the HCFA certification, the UICMC agreed with respect to billing, that it would "limit Medicare to accepted conditions as defined in the Federal Register (Vol. 56, No. 71/Friday April 12, 1991/pages 15006 through 15018)."

23.     UICMC and U of C are reimbursed approximately $250,000 per transplantation, for certain patients, from Medicare and/or Medicaid, inclusive of the surgery, in-patient hospitalization, out patient services and laboratory charges.

## FALSE HOSPITALIZATIONS AND FALSE CLAIMS

24.     In order to secure federal and state reimbursements for in-patient and out-patient hospitalization and attendant laboratory and other services, defendants have placed patients in the hospital and their Intensive Care Units for extended periods of time, although such hospitalizations were not medically necessary or without regard to the medical necessity.  Since at least 1995, defendants have falsely diagnosed and hospitalized patients; and falsely up-coded their medical conditions, including  to liver status 1  *(Confined in the intensive care unit and likely to die in seven day*s) or liver status 2 (*extremely ill with chronic disease and hospital bound*).

25.      The following examples illustrate some, but not all the types of medically unnecessary or fraudulent hospitalizations and false claims by defendant.

a.     Patient DN, was admitted to the UICMC-ICU in January 1996.  He was admitted without sufficient medical necessity, and contrary to the medical records, was falsely up-coded to liver status 1.  During his hospitalization, patient DN exercised regularly.

b.   Patient MA  was admitted to the UICMC-ICU on two separate occasions, for over two months in 1996.  She was admitted without sufficient medical necessity, and contrary to the medical records, was falsely up-coded to liver status 1.  During her hospital stay, MA dressed up and performed as a clown in the public lobby, and was allowed to leave the UICMC on exit passes.

c.   Patient CP had no urgency criteria rated.  She was admitted to the UICMC-ICU in June 1997 without sufficient medical necessity, and contrary to the medical records, was falsely up-coded to liver status 1 and/or status 2A.  During her weeks in the UICMC-ICU, she left the facility exit passes.

d.   Patient JJ was admitted to the UICMC in November 1997, with "stable cirrhosis."  He was admitted without sufficient medical necessity, and contrary to the medical records, was falsely up-coded to liver status 1.  During the time period that JJ was falsely upgraded to "likely to die in seven (7) days" status, he left the UICMC-ICU on exit passes.

e.   Patient VA was admitted to UICMC-ICU in January 1998 for over five weeks, although he had "stable cirrhosis."  He was admitted without sufficient medical necessity, and contrary to the medical records, was falsely up-coded to liver status 2A.   He remains untransplanted.

26.   The above instances are but a few of the cases which illustrate defendants' schemes and plans to falsely hospitalize patients, falsely upgrade their listing status and misrepresent their medical condition or necessity for livers in order to secure payment based on these false or fraudulent claims from the government.

27.   In 1996, Dr. Pollak began to protest to his superiors at UICMC and other UNOS approved liver transplant programs in Chicago, that Chicago liver transplant programs were subverting the UNOS approved liver allocation scheme, by falsely upgrading or "fudging" liver patients criteria in order to perform liver transplants and to gain a competitive advantage. "Fudging" on the liver medical criteria in order to justify medical severity to perform liver transplants was also referred to by UICMC senior administrators as "the Chicago Way."

28.     In March 1997, the senior administrators of UICMC (Drs. Moss, Rice, Chamberlin, Layden and Abcarian) and counsel for UICMC (Bruce Kite) asked to meet with Dr. Pollak. They asked him what the "downside" might be to using the "Chicago Way" of listing potential liver transplant recipients. Dr. Pollak informed them that there was pressure to "fudge" and falsely upgrade waiting liver patients in Chicago, including at UICMC.

29.     In May 1997, senior UICMC administrators again requested to meet with Dr. Pollak to discuss the liver transplant program. Dr. Pollak made a presentation on the history of liver allocation problems in the U.S., and the governing laws and rules based on medical urgency. He was asked by the UICMC deans (Drs. Rice, Chamberlin and Moss the presence of Dr. Abcarian) to again explain the "downside" of UICMC falsely upgrading the medical urgency of waiting patients in order to gain a competitive advantage over other liver patients and transplant programs in the City. Following the meeting, Dr. Pollak announced to the Department Head, Dr. Abcarian that he would not participate in or condone any fraudulent conduct in the operation of the liver program.

30.     On or about June 1997, following his request that the UICMC investigate fraud in the liver transplant program, Dr. Pollak was issued a written disciplinary letter for "virtual insubordination," by Dean Gerald Moss. Dr. Pollak's insubordination arose in part, from his refusal to follow the instructions of UICMC Dean William Chamberlin, M.D., to conduct the liver program in "the Chicago Way."'

31.     Between July 1997 and April 1998, Dr. Pollak continued to report to defendant UICMC that UICMC liver transplant physicians were falsely upgrading and hospitalizing patients who did not meet the medical criteria for their listed status.

32.    On or about March 20, 1998, Dr. Pollak met with Sidney Mitchell, the CEO

of UICMC, and UICMC counsel Bruce Kite, at their request.  Dr. Pollak described to

CEO Mitchell and to Attorney Kite the following: instances in which UICMC had

subverted the UNOS liver allocation algorithm by falsely upgrading the medical status of

waiting liver patients; and, falsely placed patients in the hospital and intensive care

units, and sometimes for months at a time, waiting for a liver, and then not being

transplanted.

33.    Prior to and following Dr. Pollak's meeting with UICMC CEO Mitchell as

set forth in paragraph 32, above, relator was told other things,  that the Senior

administration at UICMC wanted him to "back off or else"; that he should "stop writing

letters"; stop complaining about fraud; that he did not understand the "economic

imperatives" faced by UICMC; that he must give up the battle because it would

negatively impact his career; and finally, that by "upping the ante" with the CEO, and

referring to UICMC fraud in the liver transplant program, he should agree to an "out of

cycle sabbatical" or be forced to step down as Chief of Transplantation.

34.    By letter dated April 2, 1998, shortly after relator's meeting with UICMC

CEO Sidney Mitchell, and Attorney Kite, defendant UICMC stripped Dr. Pollak of all

duties as Chief of the Division of Transplant Surgery and as Medical Director of the

Transplant ICU.  Defendant UICMC via its Department head Herand Abcarian, M.D.,

stated its reasons for the demotion were because Dr. Pollak had continued to "raise the

ante" in regards to the liver transplant program at UICIC and "they want you out."

35.    On or about May 27, 1998, Dr. Pollack met with UICMC-UI President

James J. Stukel, Ph.D, and Trustee Geoffrey Gindorf, M.D., at their requests.  Dr.

Pollak made a presentation to President Stukel and Trustee Gindorf on the history and overview of the operative regulations and guidelines governing the liver transplant program. He presented to President Stukel and Trustee Gindorf patient charts, records and data that substantiated defendant UICMC's false and fraudulent billings to the government.

36.     Between April 1998 through the present, defendant has refused to allow relator the opportunity to perform liver transplants.

37.     In October 1998, UICMC removed Dr. Pollak as the UICMC representative to UNOS and has sought to remove him from the ROBI Board of Directors.

## COUNT I
### (VIOLATION OF THE FALSE CLAIMS ACT AGAINST UICMC)

38.     Relator realleges and repeats paragraphs 1 through 37 as if fully set forth herein.

39.     Defendant UICMC is a government contractor, and has acted to defraud the United States by submitting and obtaining reimbursements under the Medicare programs (1) for patients who were falsely upgraded to a Status 1 or Status 2A liver condition, although the medical evidence was to the contrary; (2) for patients who were hospitalized for extended periods of time or to await a liver transplantation, although said hospitalization was not medically necessary, or was without regard to its medical necessity, and (3) for patients who received liver transplants, although said patients were not eligible for transplantation under the governing federal regulations.

40.     31 U.S.C. § 3729 of the False Claims Act states as follows:

Liability for certain acts.  Any person who -

a.      knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;

b.      knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;

c.      conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;

d.      has possession, custody, or control of property or money used, or to be used, by the Government and, intending to defraud the Government or willfully to conceal the property, delivers, or causes to be delivered, less property than the amount for which the person receives a certificate or receipt;

e.      authorized to make or deliver a document certifying receipt of property used, or to be used, by the Government and, intending to defraud the Government, makes or delivers the receipt without completely knowing that the information on the receipt is true;

f.      knowingly buys, or receives a pledge of an obligation or debt, public property from an officer or employee of the Government, or a member of the Armed Forces, who lawfully may not sell or pledge the property; or

g.      knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government,

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person, except ....

41.     By virtue of the acts described above, Defendant UICMC knowingly submitted or caused to be submitted false or fraudulent claims for payment of Medicare benefits.

42.     By virtue of the acts described above, Defendant UICMC knowingly made, used or caused to be made or used false statements to obtain government payment for false and fraudulent claims.

43.     Defendant UICMC has not notified the United States Government of the violation of the False Claims Act.

44.     The United States, unaware of the falsity of the records, statements or claims made by Defendant UICMC has paid Defendant UICMC for claims that would otherwise not have been allowed.

45.     By reason of these payments, the United States has been damaged, in a substantial amount, since at least late 1995.

**WHEREFORE**, the United States of America, by the Relator, prays this Court give judgment in his favor and against Defendant, Board of Trustees of the University of Illinois on Count I and issue orders in accordance with the False Claims Act, 31 U.S.C. §3729 et seq., specifically;

a.     Order Defendant to cease and desist from violating the False Claims Act, 31 U.S.C. §3729 et seq.;

b.     Order Defendant to pay a compensatory amount equal to three times the amount of damages the United States of America has sustained for each false claim submitted by Defendant, plus a civil penalty of $10,000.00 per false claim and the costs of this action pursuant to 31 U.S.C. §3729(a);

c.     Order Defendant to pay the Relator's reasonable costs and expenses, including reasonable attorneys' fees, pursuant to 31 U.S.C. §3730(d)(1);

d.     Order that Relator be awarded the statutory percentage of the amount received by the government pursuant to 31 U.S.C. §3730(d)(1); and

e.     Order such other and further relief as this Court deems just and proper.

## COUNT II
## (VIOLATION OF THE ILLINOIS WHISTLEBLOWER
## REWARD AND PROTECTION ACT AGAINST UICMC)

46.     Relator realleges and repeats paragraphs 1 through 37 as if fully set forth herein.

47.     Defendant UICMC is a government contractor, and has acted to defraud the State of Illinois by submitting and obtaining reimbursements under the Medicaid programs (1) for patients who were falsely upgraded to a Status 1 or Status 2A liver condition, although the medical evidence was to the contrary; (2) for patients who were hospitalized for extended periods of time or to await a liver transplantation, although said hospitalization was not medically necessary, or was without regard to its medical necessity, and (3) for patients who received liver transplants, although said patients were not eligible for transplantation under the governing regulations.

48.     740 ILCS 175/3 (a) of the Whistleblower Reward and Protection Act states as follows:

Liability for certain acts.  Any person who-

a.      knowingly presents, or causes to be presented, to an officer or employee of the State or a member of the Guard a false or fraudulent claim for payment or approval;

b.      knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State;

c.      conspires to defraud the State by getting a false or fraudulent claim allowed or paid;

d.      has possession, custody, or control of property or money used, or to be used, by the State and, intending to defraud the State or willfully to conceal the property, delivers, or causes to be delivered, less property than the amount for which the person receives a certificate or receipt;

e.  authorized to make or deliver a document certifying receipt of property used, or to be used, by the State and, intending to defraud the State, makes or delivers the receipt without completely knowing that the information on the receipt is true;

f.  knowingly buys, or receives a pledge or an obligation or debt, public property from an officer or employee of the State, or a member of the Armed Forces, who lawfully may not sell or pledge the property; or

g.  knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the State,

is liable to the State for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the State sustains because of the act of that person. A person violating this subsection (a) shall also be liable to the State for the costs of a civil action brought to recover any such penalty or damages.

49.  By virtue of the acts described above, Defendant UICMC knowingly made, used or caused to be made or used false statements to obtain payment of Medicaid benefits from the State of Illinois.

50.  Defendant UICMC has not notified the State of Illinois of the violation of the IWRPA.

51.  The State of Illinois, unaware of the falsity of the records, statements or claims made by Defendant UICMC, has paid Defendant UICMC for claims that otherwise would not have been allowed.

52.  By reason of these payments made by IDPA. The State of Illinois has been damaged, since at least 1995, and continues to be damaged in a substantial amount.

**WHEREFORE,** the State of Illinois, by the Relator prays this Court give judgment in his favor and against Defendant on Count II and issue orders in accordance with the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1 et seq. specifically;

a.   Order Defendant to cease and desist from violating the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1 et seq;

b.   Order Defendant to pay a compensatory amount equal to three times the amount of damages the State of Illinois has sustained for each false claim submitted by Defendant plus a civil penalty of $10,000 per false claim and the costs of this action pursuant to 740 ILCS 175/3(a);

c.   Order Defendant to pay the Attorney General's expenses, including reasonable attorneys' fees and cost, pursuant to 740 ILCS 175/4(d)(1);

d.   Order Defendant pay the Relator's reasonable costs and expenses, including reasonable attorneys' fees, pursuant to 740 ILCS 175/4(d)(1);

e.   That Relator be awarded the statutory percentage of the amount received by the government pursuant to 740 ILCS 175/4(d)(1); and,

f.   Such other and further relief as this Court deems just and proper.

## COUNT III
## (UNLAWFUL RETALIATION AGAINST
## UICMC UNDER THE FALSE CLAIMS ACT)

53.   Dr. Pollak realleges and repeats paragraphs 1 through 52 as if fully set forth herein.

54.   Dr. Pollak has original and direct knowledge of the aforesaid illegal practices during the course of his employment at UICMC.  Since bringing defendant UICMC's false and fraudulent conduct to light, he has been subjected to harassment, retaliation and discrimination by UICMC, and has suffered emotional distress, all of which are continuing to date.

**WHEREFORE**, Relator prays this Court give judgment in his favor and against Defendant on Count III and, and specifically;

a.   Grant him such relief as is appropriate under the provisions of 31 U.S.C. Section 3730(h) of the False Claims Act;

b.     Issue an injunction to permanently restrain and enjoin UICMC and its agents, employees, and administrators from harassing, retaliating or otherwise discriminating against him;

c.     Make him whole for the damages and financial losses suffered, including punitive and compensatory damages;

d.     Order UICMC to restore the status quo ante, restoring him to all positions he held prior to March 20, 1998;

e.     That Relator be awarded his attorneys' fees and costs;

f.     Any other such relief as is fair and equitable.

## COUNT IV
## (UNLAWFUL RETALIATION AGAINST UICMC UNDER THE ILLINOIS WHISTLEBLOWER REWARD AND PROTECTION ACT)

55.     Dr. Pollak realleges and repeats paragraphs 1 through 52 as if fully set forth herein.

56.     Dr. Pollak has original and direct knowledge of the aforesaid illegal practices during the course of his employment at UICMC.  Since bringing defendant's false and fraudulent conduct to light, he has been subjected to harassment, retaliation and discrimination by UICMC, and suffered emotional distress, all of which are continuing to date.

**WHEREFORE**, Dr. Pollak requests this Court enter an order under Count IV of this Complaint against UICMC, as follows:

a.     To grant him such relief as is appropriate under the provisions of 740 ILCS 175 et seq.

b.     To issue an injunction to restrain and enjoin the defendant from harassing, retaliating or otherwise discriminating against him;

c.     To make him whole for the damages and financial losses suffered, including punitive and compensatory damages;

    d.    An order restoring the status quo ante, restoring him to all positions he held prior to March 20, 1998;

    e.    That Relator be awarded his attorneys' fees and costs;

    f.    Any such other relief as is fair and equitable.

## COUNT V
### (UNLAWFUL RETALIATION AGAINST UICMC IN VIOLATION OF THE PUBLIC POLICY OF THE STATE OF ILLINOIS)

57.    Relator realleges and repeats paragraphs 1 through 52 as if fully set forth herein.

58.    It is the public policy of the State of Illinois to prevent fraud and false claims in the administration of programs by transplant programs, including state owned programs and hospitals such as defendant UICMC.

59.    Relator Dr. Pollak has acted to protect the people of the State of Illinois from the aforesaid illegal practices and as a result, he has been subjected to harassment, retaliation and discrimination, loss of position and wages, all of which are continuing to date.

**WHEREFORE,** Relator prays this Court give judgment in his favor and against Defendant on Count V and specifically;

    a.    Issue an injunction to permanently restrain and enjoin UICMC and its agents, employees, and administrators from harassing, retaliating or otherwise discriminating against him;

    b.    Make him whole for the damages and financial losses suffered, including punitive and compensatory damages;

    c.    Order UICMC to restore the status quo ante, restoring him to all positions he held prior to March 20, 1998;

    d.    Any other such relief as is fair and equitable.

## COUNT VI
## (VIOLATION OF THE FALSE CLAIMS ACT AGAINST UNIVERSITY OF CHICAGO)

60.    Relator realleges and repeats paragraphs 1 through 37 as if fully set forth herein.

61.    Defendant UNIVERSITY OF CHICAGO is a government contractor, and has acted to defraud the United States by submitting and obtaining reimbursements under the Medicare programs (1) for patients who were falsely upgraded to a Status 1 or Status 2A liver condition, although the medical evidence was to the contrary; (2) for patients who were hospitalized for extended periods of time or to await a liver transplantation, although said hospitalization was not medically necessary, or was without regard to its medical necessity, and (3) for patients who received liver transplants, although said patients were not eligible for transplantation under the governing federal regulations.

62.    That 31 U.S.C. § 3729 of the False Claims Act states as follows: Liability for certain acts.  Any person who -

    a.    knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;

    b.    knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;

    c.    conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;

    d.    has possession, custody, or control of property or money used, or to be used, by the Government and, intending to defraud the Government or willfully to conceal the property, delivers, or causes to be delivered, less property than the amount for which the person receives a certificate or receipt;

e.  authorized to make or deliver a document certifying receipt of property used, or to be used, by the Government and, intending to defraud the Government, makes or delivers the receipt without completely knowing that the information on the receipt is true;

f.  knowingly buys, or receives a pledge of an obligation or debt, public property from an officer or employee of the Government, or a member of the Armed Forces, who lawfully may not sell or pledge the property; or

g.  knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government,

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person, except ....

63.  By virtue of the acts described above, Defendant U of C knowingly submitted or caused to be submitted false or fraudulent claims for payment of Medicare benefits.

64.  By virtue of the acts described above, Defendant U of C knowingly made, used or cause to be made or used false statements to obtain government payment for false and fraudulent claims.

65.  Defendant U of C has not notified the United States Government of the violation of the False Claims Act.

66.  The United States, unaware of the falsity of the records, statements or claims made by Defendant U of C, has paid Defendant U of C for claims that would otherwise not have been allowed.

67.  By reason of these payments, the United States has been damaged, since at least late 1995.

**WHEREFORE**, the United States of America, by the Relator, prays this Court give judgment in his favor and against Defendant, University of Chicago under Count VI, and issue orders in accordance with the False Claims Act, 31 U.S.C. § 3729 et seq., specifically;

a.   Order Defendant to cease and desist from violating the False Claims Act, 31 U.S.C. § 3729 et seq.;

b.   Order Defendant to pay a compensatory amount equal to three times the amount of damages the United States of America has sustained for each false claim submitted by Defendant, plus a civil penalty of $10,000.00 per false claim and the costs of this action pursuant to 31 U.S.C. § 3729(a);

c.   Order Defendant to pay the Relators' reasonable costs and expenses, including reasonable attorneys fees, pursuant to 31 U.S.C. § 3730(d)(1);

d.   Order that Relator be awarded the statutory percentage of the amount received by the government pursuant to 31 U.S.C. § 3730(d)(1); and

e.   Order such other and further relief as this Court deems just and proper.

## COUNT VII
### (VIOLATION OF THE ILLINOIS WHISTLEBLOWER REWARD AND PROTECTION ACT AGAINST UNIVERSITY OF CHICAGO)

68.   Relator realleges and repeats paragraphs 1 through 37 as if fully set forth herein.

69.   Defendant U of C is a government contractor, and has acted to defraud the State of Illinois by submitting and obtaining reimbursements under the Medicaid programs (1) for patients who were falsely upgraded to a Status 1 or Status 2A liver condition, although the medical evidence was to the contrary; (2) for patients who were hospitalized for extended periods of time or to await a liver transplantation, although said hospitalization was not medically necessary, or was without regard to its medical

necessity, and (3) for patients who received liver transplants, although said patients were not eligible for transplantation under the governing federal regulations.

70.     740 ILCS 175/3 (a) of the Whistleblower Reward Act states as follows:

Liability for certain acts.  Any person who-

a.      knowingly presents, or causes to be presented, to an officer or employee of the State or a member of the Guard a false or fraudulent claim for payment or approval;

b.      knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State;

c.      conspires to defraud the State by getting a false or fraudulent claim allowed or paid;

d.      has possession, custody, or control of property or money used, or to be used, by the State and, intending to defraud the State or willfully to conceal the property, delivers, or causes to be delivered, less property than the amount for which the person receives a certificate or receipt;

e.      authorized to make or deliver a document certifying receipt of property used, or to be used, by the State and, intending to defraud the State, makes or delivers the receipt without completely knowing that the information on the receipt is true;

f.      knowingly buys, or receives a pledge or an obligation or debt, public property from an officer or employee of the State, or a member of the Armed Forces, who lawfully may not sell or pledge the property; or

g.      knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the State,

is liable to the State for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the State sustains because of the act of that person.  A person violating this subsection (a) shall also be liable to the State for the costs of a civil action brought to recover any such penalty or damages.

71. By virtue of the acts described above, Defendant knowingly made, used or caused to be made or used false statements to obtain payment of Medicaid benefits from the State of Illinois.

72. Defendant U of C has not notified the State of Illinois of the violation of the IWRPA.

73. The State of Illinois, unaware of the falsity of the records, statements or claims made by Defendant U of C, has paid Defendant U of C for claims that otherwise would not have been allowed.

74. By reason of these payments made by IDPA, the State of Illinois has been damaged, since at least 1995, and continues to be damaged in a substantial amount.

WHEREFORE, the State of Illinois, by the Relator prays this Court give judgment in his favor and against Defendant U of C on Count VII and issue orders in accordance with the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1 et seq. specifically;

a. Order Defendant to cease and desist from violating the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1 et seq;

b. Order Defendant to pay a compensatory amount equal to three times the amount of damages the State of Illinois has sustained for each false claim submitted by Defendant plus a civil penalty of $10,000 per false claim and the costs of this action pursuant to 740 ILCS 175/3(a);

c. Order Defendant to pay the Attorney General's expenses, including reasonable attorneys' fees and cost, pursuant to 740 ILCS 175/4(d)(1);

d. Order Defendant pay the Relator's reasonable costs and expenses, including reasonable attorneys' fees, pursuant to 740 ILCS 175/4(d)(1);

e. That Relator be awarded the statutory percentage of the amount received by the government pursuant to 740 ILCS 175/4(d)(1); and,

f. Such other and further relief as this Court deems just and proper.

UNITED STATES OF AMERICA and the STATE
OF ILLINOIS, ex rel,


*Robin B. Potter*

One of Relator's Attorneys


Laurie Wasserman, Esq. #3124845
9933 Lawler Avenue, Suite 321
Skokie, IL. 60077
(847) 674-7324

Robin B. Potter, Esq. #3123932
POTTER & SCHAFFNER, P.C.
30 North LaSalle Street, Suite 1724
Chicago, IL 60602
(312) 759-2500

Ronald E. Osman, Esq. #3124845
Ronald E. Osman & Associates
1602 W. Kimmel
Marion, Illinois 62959
(618) 997-5151

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing COMPLAINT was filed *in camera* and *under seal* pursuant to the False Claims Act and the Illinois Whistleblower Reward and Protection Act, was served upon all parties listed below by delivery, as noted, or by placing same in the United States Postal Depository located at 30 North LaSalle Street, Chicago, Illinois, before 5:00 p.m. on the 4th day of February 1999, First Class postage prepaid, addressed as follows:

Linda Wawzenski, Esq.
CHIEF, CIVIL DIVISION
UNITED STATES ATTORNEY
219 South Dearborn Street
Suite 500
Chicago, Illinois 60604
**HAND-DELIVERY**

Frank W. Hunger, Esq.
CIVIL DIVISION
U.S. DEPARTMENT OF JUSTICE
10th & Constitution Avenue, N.W.
Room 3143
Washington, D.C. 20530

James Ryan, Esq.
Illinois Attorney General
State of Illinois Center
100 West Randolph Street
12th Floor
Chicago, Illinois 60601
**HAND-DELIVERY**

Robin B. Potter

FILED IN CAMERA AND UNDER
SEAL PURSUANT TO THE FALSE
CLAIMS ACT

JS 44
(Rev. 11/95)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

UNITED STATES OF AMERICA and the STATE OF ILLINOIS, ex rel., RAYMOND POLLAK, M.D.

## DEFENDANTS

BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS and THE UNIVERSITY OF CHICAGO

99C 0710

DOCKETED
AUG 07 2003

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    Cook
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    Cook
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) (312)
Robin B. Potter, 30 N. LaSalle,Chicago 759-2500
Laurie Wasserman, 9933 Lawler, Skokie (847)674-7324
Ron E. Osman, 1602 W. Kimmel, Marion (618) 997-5151

ATTORNEYS (IF KNOWN)

JUDGE CASTILLO

CHIEF JUDGE ASPEN

## II. BASIS OF JURISDICTION    (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN    (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT    (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury – Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☒ 151 Medicare Act | | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 850 Securities/Commodities/Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

An action to recover damages, civil penalties and injunctive relief for fraud and False Claims Act and Illinois Whistleblower Reward and Protection Act, for Medicare and Medicaid fraud.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ YES    ☐ NO

## VIII. RELATED CASE(S) IF ANY    (See Instructions):

JUDGE                              DOCKET NUMBER

DATE
February 4, 1999

SIGNATURE OF ATTORNEY OF RECORD
Robin B. Pott

FOR OFFICE USE ONLY

RECEIPT #_____    AMOUNT_____    APPLYING IFP_____    JUDGE_____    MAG. JUDGE_____

FILED IN CAMERA AND UNDER SEAL PURSUANT
TO THE FALSE CLAIMS ACT, 31 USC §3730

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

In the Matter of

USA and the STATE OF ILLINOIS, ex rel.,
RAYMOND POLLAK, Plaintiff/Relator vs.
BOARD OF TRUSTEES, et al.

**99C    0710**

Case Number:

DOCKETED
AUG 0 7 2003

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Plaintiff/Relator

JUDGE CASTILLO

| (A) | (B) |
|---|---|
| SIGNATURE *Robin B. Potter* | SIGNATURE *Ronald E Osman* |
| NAME  Robin B. Potter | NAME  Ronald E. Osman |
| FIRM  POTTER & SCHAFFNER, P.C. | FIRM  Ronald E. Osman & Assoc. |
| STREET ADDRESS  30 North LaSalle St., Suite 1724 | STREET ADDRESS  1602 West Kimmel |
| CITY/STATE/ZIP  Chicago, IL. 60602 | CITY/STATE/ZIP  Marion, Illinois  62959 |
| TELEPHONE NUMBER  (312) 759-2500 | TELEPHONE NUMBER  (618) 997-5151 |
| IDENTIFICATION NUMBER  (SEE ITEM 4 ON REVERSE)  3123932 | IDENTIFICATION NUMBER  (SEE ITEM 4 ON REVERSE)  3123542 |
| MEMBER OF TRIAL BAR?   YES ☒   NO ☐ | MEMBER OF TRIAL BAR?   YES ☐   NO ☒ |
| TRIAL ATTORNEY?   YES ☒   NO ☐ | TRIAL ATTORNEY?   YES ☒   NO ☐ |
|  | DESIGNATED AS LOCAL COUNSEL?   YES ☐   NO ☒ |

| (C) | (D) |
|---|---|
| SIGNATURE *Laurie* | SIGNATURE |
| NAME  Laurie J. Wasserman | NAME |
| FIRM  Law Office of Laurie J. Wasserman | FIRM |
| STREET ADDRESS  9933 Lawler Avenue, Suite 321 | STREET ADDRESS |
| CITY/STATE/ZIP  Skokie, Illinois  60077 | CITY/STATE/ZIP |
| TELEPHONE NUMBER  (847) 674-7324 | TELEPHONE NUMBER |
| IDENTIFICATION NUMBER  (SEE ITEM 4 ON REVERSE)  3124845 | IDENTIFICATION NUMBER  (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR?   YES ☐   NO ☒ | MEMBER OF TRIAL BAR?   YES ☐   NO ☐ |
| TRIAL ATTORNEY?   YES ☒   NO ☐ | TRIAL ATTORNEY?   YES ☐   NO ☐ |
| DESIGNATED AS LOCAL COUNSEL?   YES ☐   NO ☒ | DESIGNATED AS LOCAL COUNSEL?   YES ☐   NO ☐ |

**PLEASE COMPLETE IN ACCORDANCE WITH INSTRUCTIONS ON REVERSE.**