RECEIVED

NOV 17 2003

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF ILLINOIS, *ex rel.* RAYMOND POLLAK, M.D. | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, | ) ) ) |
| Defendant. | ) ) |

**FILED**

No. 99 C 710   NOV 1 7 2003

Judge Leinenweber GARY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

DOCKETED
NOV 2 1 2003

## SETTLEMENT AGREEMENT BETWEEN PLAINTIFFS AND THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS

### I. PARTIES

This Settlement Agreement ("Agreement") is entered into among the United States of America ("United States"), acting through the United States Department of Justice and on behalf of the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services ("HHS"), the State of Illinois, The Board of Trustees of the University of Illinois ("UIC") and Raymond Pollak, M.D. ("Relator") (collectively referred to as "the Parties"), through their authorized representatives.

### II. PREAMBLE

As a preamble to this Agreement, the Parties agree to the following:

A.    UIC is a body politic and corporate that operates a teaching and clinical hospital known as the University of Illinois Medical Center at Chicago ("UIMCC") that, among other things, performs liver transplants.

4)

B.     Relator is an individual resident of the State of Illinois. On February 4, 1999, Relator filed a *qui tam* action in the United States District Court for the Northern District of Illinois captioned *United States of America & State of Illinois ex rel. Raymond Pollak, M.D. v. Board of Trustees of the University of Illinois & the University of Chicago*, Case No. 99 C 710. Relator filed a first amended complaint on April 5, 2001. (The First Amended Complaint is hereafter referred to as the "Civil Action.") Relator is a medical doctor at UIMCC, and prior to April 1998, he was the director of the multiorgan transplant program at UIMCC. The United States and the State of Illinois intervened in the Civil Action on July 28, 2003, and on the same date, they filed a separate complaint against UIC. On November 17, 2003, (the "Effective Date"), the United States, the State of Illinois and Relator will file a Joint Stipulation of Dismissal With Prejudice as to the federal and state claims contained in the Civil Action and in the July 28, 2003, complaint, consistent with this Agreement.

C.     The United States contends that UIC submitted or caused to be submitted claims for payment to the Medicare Program ("Medicare"), Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395ggg, and to the Medicaid Program, 42 U.S.C. §§ 1396-1396v.

D.     The United States contends that it has certain civil claims against UIC, as specified in Paragraph 2 below, for submitting claims to Medicare and Medicaid (hereinafter referred to as the "Covered Conduct") during the period from January 1, 1995 to December 31, 1998, for:

- admitting liver transplant-eligible patients to the intensive care unit when it was not medically necessary;

- admitting liver transplant-eligible patients to the hospital when it was not medically necessary;

- billing for these medically unnecessary hospitalizations and services;

- falsely diagnosing patients to justify their placement on the liver transplant eligibility list;

- falsely identifying patients as "Status 1" or "Status 2A" for the purpose of making the patients eligible for liver transplants before other patients also in need of liver transplants; and

- transplanting a patient who was medically ineligible to receive a transplant.

E.  The United States contends also that it has certain administrative claims against UIC for engaging in the Covered Conduct, as specified in Paragraph 3 below.

F.  The State of Illinois contends also that it has certain administrative claims against UIC for engaging in the Covered Conduct, as specified in Paragraph 4 below.

G.  UIC expressly denies, affirmatively contests and maintains that it has valid defenses to all the allegations and claims asserted in the Civil Action and maintains that its conduct was at all times appropriate and lawful and did not result in any violations of federal or state law, federal or state regulations, common law principles or equitable doctrines.  Moreover, UIC expressly denies and affirmatively contests any allegation in the Civil Action and the July 28, 2003, complaint or any inference drawn therefrom that any patient or prospective patient was ever adversely affected, harmed or damaged in any way as a result of the conduct of any of its physicians, agents or employees.

H.  Neither this Agreement, nor any provisions contained therein, constitutes an admission of liability or an admission of fact by UIC.  UIC enters into this Agreement solely to avoid

the delay, expense, inconvenience and uncertainty of protracted litigation of the claims set forth in the Civil Action and the July 28, 2003, complaint.

     I.     This Agreement is not a concession by the United States, the State of Illinois or Relator that their claims are not well founded.

     J.     To avoid delay, expense, inconvenience and uncertainty of protracted litigation of the claims set forth in the Civil Action, the July 28, 2003, Complaint or the Covered Conduct, the United States, the State of Illinois and Relator compromise the claims that they are releasing and settling herein that they assert they have against UIC, consistent with this Agreement.

     K.     The parties reach a full and final settlement, with the exception of Counts III through VI of the Civil Action, and any other claims not specifically released by this Agreement, pursuant to the terms and conditions below.

     L.     Notwithstanding this Agreement, UIC expressly reserves any and all defenses to any and all remaining counts of the Civil Action.

## III. TERMS AND CONDITIONS

     1.     UIC agrees to pay $2,003,290.78 (the "Settlement Amount"). The foregoing payment shall be made as follows:

     a.     UIC agrees to pay $1,001,645.39 of the Settlement Amount to the United States by electronic funds transfer pursuant to written instructions to be provided by the Department of Justice. UIC agrees to make this electronic funds transfer no later than November 17, 2003. Contingent upon the United States receiving this electronic funds transfer from UIC and promptly upon receipt, the United States agrees to pay $250,411.35 to Relator by electronic funds transfer.

b.      UIC agrees to pay $751,234.04 of the Settlement Amount to the State of Illinois by check made payable to the State of Illinois and delivered to the Illinois Attorney General's Office. UIC further agrees to pay $250,411.35 to Relator by check made payable to Raymond Pollak, MD and Robin Potter & Associates and delivered to the Illinois Attorney General's Office. UIC agrees to deliver these checks no later than November 17, 2003.

c.      UIC further agrees to pay $299,000.00 as settlement for Relator's attorneys' fees, expenses and costs to Relator's counsel by check made payable to Robin Potter & Associates. UIC agrees to deliver this check no later than November 17, 2003.

2.      Subject to the exceptions in Paragraph 5 below, in consideration of the obligations of UIC in this Agreement, conditioned upon full payment of the Settlement Amount by UIC, the United States (on behalf of itself, its officers, agents, agencies, and departments) agrees to release UIC, together with its current and former parent corporations, each of its direct and indirect subsidiaries, brother or sister corporations, and assigns of any of them, from any civil or administrative monetary claim the United States has or may have for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, disgorgement, constructive trust, breach of contract, and fraud. The United States does not release any individuals in this Agreement.

3.      In consideration of the obligations of UIC in this Agreement, including the Integrity Requirements of Paragraph 9, and conditioned upon UIC's full payment of the Settlement Amount by UIC, the OIG-HHS agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from the Medicare, Medicaid, or other Federal health care

programs (as defined in 42 U.S.C. § 1320a-7b(f)) against UIC under 42 U.S.C. § 1320a-7a (Civil

Monetary Penalties Law), or 42 U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud, kickbacks,

and other prohibited activities), for the Covered Conduct, except as reserved in Paragraph 5 below,

and as reserved in this Paragraph. The OIG-HHS expressly reserves all rights to comply with any

statutory obligations to exclude UIC from Medicare, Medicaid, or other Federal health care programs

under 42 U.S.C. § 1320a-7(a) (mandatory exclusion) based upon the Covered Conduct. Nothing in

this Paragraph precludes the OIG-HHS from taking action against entities or person, or for conduct

and practices, for which claims have been reserved in Paragraph 5, below.

4.      In consideration of the obligations of UIC in this Agreement, conditioned upon UIC's

full payment of the Settlement Amount, the State of Illinois agrees to release UIC, together with its

current and former parent corporations, each of its direct and indirect subsidiaries, brother or sister

corporations, and assigns of any of them, from any civil claims or penalties the State of Illinois has

or may have under the Illinois Whistleblower Act, 740 ILCS 175/3(a) and the Civil Remedies

Section of the Public Aid Act, 89 Ill. Adm. Code § 140.15 and 305 ILCS 5/12 4.25(E) or the

common law theories of payment by mistake, unjust enrichment, breach of contract, and fraud for

claims submitted to the State Medicaid Program for the Covered Conduct.

5.      Notwithstanding any term of this Agreement, specifically reserved and excluded from

the scope and terms of this Agreement as to any entity or person (including UIC and Relator) are the

following claims:

        a.      Any civil, criminal, or administrative  liability arising under Title 26, U.S.

Code (Internal Revenue Code);

        b.      Any criminal liability;

c.       Except as explicitly stated in this Agreement, any administrative liability, including mandatory exclusion from Federal health care programs;

d.       Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e.       Any liability based upon such obligations as are created by this Agreement;

f.       Any civil or administrative liability of individuals, including officers and employees of the United States;

g.       Any civil or administrative liability that UIC has or may have under any state statute, regulation or rule not covered by the releases in Paragraph 4 of this Agreement; and

h.       Any individual claims Relator may have pursuant to section 3730(h) of the False Claims Act, section 4(g) of the Illinois Whistleblower Act, and the remaining claims in the Civil Action and in the pending state court action, or any claims not specifically released by this Agreement.

6.       Conditioned upon receipt of the payment described in Paragraph 1, Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, agrees to release the United States, the State of Illinois and their officers, agents, and employees, from any claims arising from or relating to the dismissed claims under 31 U.S.C. § 3730 in connection with this Civil Action, or arising from the filing of the Civil Action, including 31 U.S.C. §§ 3730(b), (c), and (d), in connection with this Civil Action, and excluding Relator's claims under 31 U.S.C. § 3730(h) and his employment claims.  Relator agrees and confirms that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B).

7.     Conditioned upon receipt of the payment described in Paragraph 1, Relator, for himself, and for his heirs, successors, attorneys, agents, and assigns, agrees to release UIC, together with its current and former parent corporations, each of its direct and indirect subsidiaries, brother or sister corporations, and assigns of any of them, from any liability to Relator arising from or relating to the filing of the Civil Action and/or the Covered Conduct, and all other claims not specifically released by this Agreement, including the claims asserted in Counts III-VI of the Civil Action, the pending state court litigation and claims arising after the effective date of this Agreement.

8.     Subject to the exceptions in Paragraph 5 above, in consideration of the obligations of UIC in this Agreement, conditioned upon full payment of the Settlement Amount by UIC, Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, agrees to release UIC, together with its current and former parent corporations, each of its direct and indirect subsidiaries, brother or sister corporations, and assigns of any of them, from any civil monetary claim the United States, has or may have for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733, and further releases any and all claims for attorneys' fees, expenses and costs pursuant to 31 U.S.C. § 3730(d). Relator's claims under 31 U.S.C. § 3730(h) and related employment claims, and his state court action are specifically not released.

9.     Integrity Requirements. UIMCC shall adhere to the following integrity requirements for a period of three (3) years from the Effective Date:

a.     <u>Continued Implementation of Corporate Compliance Program</u>. UIMCC shall continue to implement its Corporate Compliance Program, as described in the Declaration attached hereto and incorporated herein by this reference as Appendix A, and continue to provide, at a

minimum, the same level of resources currently provided, throughout this time period. UIMCC may amend its Corporate Compliance Program as it deems necessary, so long as those amendments are consistent with the overall objective of ensuring compliance with the requirements of Medicare, Medicaid, and all other Federal health care programs, as defined in 42 U.S.C. § 1320a-7b(f).

      b.    <u>Reporting of Overpayments</u>. UIMCC shall promptly refund to the appropriate Federal health care program payor any identified Overpayment(s). For purposes of this Agreement, an "Overpayment" shall mean the amount of money UIMCC has received in excess of the amount due and payable under any Federal health care program requirements. If, at any time, UIMCC identifies or learns of any Overpayment, UIMCC shall notify the payor (<i>e.g.</i>, Medicare fiscal intermediary or carrier) within 30 days after identification of the Overpayment and take remedial steps within 60 days after identification (or such additional time as may be agreed to by the payor) to correct the problem, including preventing the underlying problem and the Overpayment from recurring. Also, within 30 days after identification of the Overpayment, UIMCC shall repay the Overpayment to the appropriate payor to the extent such Overpayment has been quantified. If not yet quantified, within 30 days after identification, UIMCC shall notify the payor of its efforts to quantify the Overpayment amount along with a schedule of when such work is expected to be completed. Notification and repayment to the payor shall be done in accordance with the payor's policies, and for Medicare contractors, shall include the information contained on the Overpayment Refund Form, provided as Appendix C to this Agreement.

      c.    <u>Reportable Events</u>. UIMCC shall report to OIG-HHS in writing within 30 days after making a determination (after a reasonable opportunity to conduct an appropriate review or investigation of the allegations) that there is a Reportable Event, which shall mean anything that

involves: (1) a substantial Overpayment, or (2) a matter that a reasonable person would consider a probable violation of criminal, civil, or administrative laws applicable to any Federal health care program for which penalties or exclusion may be authorized. In such report, UIMCC shall include the following information:

      i.    if the Reportable Event results in an Overpayment, the report to OIG-HHS shall be made at the same time as the notification to the payor required in Section 9(b), and shall include all of the information on the Overpayment Refund Form, as well as:

      A.    the payor's name, address, and contact person to whom the Overpayment was sent; and

      B.    the date of the check and identification number (or electronic transaction number) by which the Overpayment was repaid/refunded;

      ii.    a complete description of the Reportable Event, including the relevant facts, persons involved, and legal and Federal health care program authorities implicated;

      iii.    a description of UIMCC's actions taken to correct the Reportable Event; and

      iv.    any further steps UIMCC plans to take to address the Reportable Event and prevent it from recurring.

      d.    <u>Notification of Government Investigation or Legal Proceedings</u>. Within 30 days after discovery, UIMCC shall notify OIG-HHS, in writing, of any ongoing investigation or legal proceeding known to UIMCC conducted or brought by a governmental entity or its agents involving an allegation that UIMCC has committed a crime or has engaged in fraudulent activities. This notification shall include a description of the allegation, the identity of the investigating or

prosecuting agency, and the status of such investigation or legal proceeding. UIMCC shall also provide written notice to OIG-HHS within 30 days after the resolution of the matter, and shall provide OIG-HHS with a description of the findings and/or results of the investigation or proceedings, if any.

e.    Annual Reporting Requirements. Each one-year period, beginning with the one-year period following the Effective Date of this Agreement, shall be referred to as a "Reporting Period." UIMCC shall submit to OIG-HHS annually a report that sets forth, under penalty of perjury, the following information for each Reporting Period ("Annual Report"):

i.    A description of any material amendments to its Corporate Compliance Program;

ii.    Any changes to the level of resources dedicated to its Corporate Compliance Program;

iii.    A summary of any internal or external reviews, audits, or analyses of its Corporate Compliance Program and any corrective action plans developed in response to such reviews, audits, or analyses;

iv.    A summary of any internal or external reviews, audits, or analyses related to billing Medicare and Medicaid for services and any corrective action plans developed in response to such reviews, audits, or analyses;

v.    A report of the aggregate Overpayments that have been returned to the Federal health care programs. Overpayment amounts shall be broken down into the following categories: inpatient Medicare, outpatient Medicare, Medicaid (report each state separately, if applicable), and other Federal health care programs. Overpayment amounts that are routinely

reconciled or adjusted pursuant to policies and procedures established by the payor do not need to be included in this aggregate Overpayment report; and

           vi.      A certification that, during the Reporting Period, UIMCC has complied with the requirements of this Paragraph 9.

The first annual report shall be received by OIG-HHS no later than 60 days after the first anniversary of the Effective Date. Subsequent annual reports shall be received by OIG-HHS no later than the anniversary date of the due date of the first annual report.

         f.      <u>Notifications and Submission of Annual Reports</u>. Unless otherwise specified in writing after the Effective Date, all notifications and Annual Reports required under this Settlement shall be submitted to the following addresses:

<u>OIG</u>:

> Administrative and Civil Remedies Branch
> Office of Counsel to the Inspector General
> Office of Inspector General
> U.S. Department of Health and Human Services
> Cohen Building, Room 5527
> 330 Independence Avenue, S.W.
> Washington, DC 20201
> Telephone: 202-619-2078
> Facsimile: 202-205-0604

UIMCC:

> William Chamberlin, M.D.
> Chief Compliance Officer
> University of Illinois Medical Center at Chicago
> University of Illinois Hospital
> 1740 West Taylor Street, Suite 1400 M/C-693
> Chicago, Illinois 60612
> Telephone: 312-996-3893
> Facsimile: 312-996-7049

Unless otherwise specified, all notifications and reports required by this Agreement may be

made by certified mail, overnight mail, hand delivery, or other means, provided that there is proof that such report or notification was received. For purposes of this requirement, internal facsimile confirmation sheets do not constitute proof of receipt.

g.     OIG-HHS Inspection, Audit, and Review Rights.  In addition to any other rights OIG may have by statute, regulation, or contract, OIG-HHS or its duly authorized representative(s) may examine or request copies of UIMCC's books, records, and other documents and supporting materials and/or conduct on-site reviews of any of UIMCC's locations for the purpose of verifying and evaluating:  (a) UIMCC's compliance with the terms of the Integrity Requirements of this Agreement; and (b) UIMCC's compliance with the requirements of the Federal health care programs in which it participates.  The documentation described above shall be made available by UIC to OIG-HHS or its duly authorized representative(s) at all reasonable times for inspection, audit, or reproduction. Furthermore, for purposes of this provision, OIG-HHS or its duly authorized representative(s) may interview any of UIMCC's employees, contractors, or agents who consent to be interviewed at the individual's place of business during normal business hours or at such other place and time as may be mutually agreed upon between the individual and OIG-HHS. UIMCC shall assist OIG-HHS or its duly authorized representative(s) in contacting and arranging interviews with such individuals upon OIG-HHS's request.  UIMCC's employees may elect to be interviewed with or without a representative of UIMCC  present.

h.     Document and Record Retention.  UIMCC shall maintain for inspection all documents and records relating to reimbursement from the Federal health care programs, or to compliance with the Integrity Requirements of this Agreement, for four (4) years (or longer if otherwise required by law).

10.    UIC waives and shall not assert any defenses UIC may have to any criminal prosecution or administrative action relating to the Covered Conduct, which defenses may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.    UIC agrees that this Agreement is not punitive in purpose or effect.    Nothing in this Paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

11.    UIC fully and finally releases Relator, the United States, the State of Illinois and their agencies, employees, servants, and agents from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) which UIC has asserted, could have asserted, or may assert in the future against the United States, the State of Illinois and their agencies, employees, servants, and agents, related to the Covered Conduct and the United States' investigation and prosecution thereof.

12.    The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare carrier or intermediary or any State payer, related to the Covered Conduct; and UIC shall not resubmit to any Medicare carrier or intermediary or any State payer any previously denied claims related to the Covered Conduct, and shall not appeal any such denials of claims.    This Settlement Amount constitutes full and final payment related to the Covered Conduct as to all signatory parties to this Agreement, except for those potential liabilities specifically excluded herein.

13. UIC agrees to the following:

a. <u>Unallowable Costs Defined:</u> that all costs (as defined in the Federal Acquisition Regulation 48 C.F.R. § 31.205-47 and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395ggg and 1396-1396v, and the regulations and official program directives promulgated thereunder) incurred by or on behalf of UIC, its present or former officers, directors, employees, shareholders, and agents in connection with the following shall be "Unallowable Costs" on contracts with the United States and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP):

i. the matters covered by this Agreement;

ii. the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

iii. UIC's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorneys' fees);

iv. the negotiation of this Agreement;

v. the performance of this Agreement with the exception of the obligations under Paragraph 9 which are expressly addressed in Paragraph 13(a)(vi);

vi. the obligations undertaken pursuant to Paragraph 9 to prepare and submit reports to the OIG-HHS; and

vii. the payment UIC makes to the United States pursuant to this Agreement and any payments that UIC may make to the State of Illinois or Relator, including costs and attorneys' fees.

However, nothing in this Paragraph affects the status of costs that are not allowable based on any other authority applicable to UIC.

b. <u>Future Treatment of Unallowable Costs</u>: Unallowable Costs shall be separately determined and accounted for by UIC, and UIC shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid Program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by UIC or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

c. <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: UIC further agrees that within 90 days of the Effective Date of this Agreement, it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid, VA and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid Program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by UIC or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. UIC agrees that the United States, at a minimum, shall be entitled to recoup from UIC any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice, and/or the affected agencies. The

United States reserves its rights to disagree with any calculations submitted by UIC or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on UIC or any of its subsidiaries' cost reports, cost statements, or information reports.

d.      Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine UIC's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

14.     This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 15 below.

15.     UIC waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

16.     UIC warrants that it has reviewed its financial situation and that it currently is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain solvent following payment to the United States of the Settlement Amount. Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to UIC, within the meaning of 11 U.S.C. § 547(c)(1); and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended and do, in fact, represent a reasonably equivalent exchange of value which is not intended to hinder, delay, or defraud any entity to which UIC was or became indebted to on or after the date of this

Page 17 of 26

transfer, within the meaning of 11 U.S.C. § 548(a)(1).

17.     Except as expressly provided to the contrary in this Agreement, each Party shall bear its own legal and other costs incurred in connection with the released claims, including the preparation and performance of this Agreement.

18.     UIC represents that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever.

19.     Relator represents that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever.

20.     This Agreement is governed by the laws of the United States. The Parties agree that the exclusive jurisdiction and venue for any dispute arising between and among the Parties under this Agreement shall be the United States District Court for the Northern District of Illinois except that disputes arising under the Integrity Requirements of Paragraph 9 shall be resolved exclusively under the dispute resolution provisions at Appendix B to this Agreement.

21.     This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties, except that only OIG-HHS and UIC must agree in writing to modification of the Integrity Requirements of Paragraph 9 or Appendices A, B, or C.

22.     Upon receipt of the payments described in Paragraph 1(a) and (b) above, the United States, the State of Illinois and Relator shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal With Prejudice of the federal and state claims in the Civil Action, and the complaint filed on July 28, 2003, pursuant to the terms of the Agreement. Counts III through VI of the Civil Action shall remain, with UIC reserving all defenses thereto.

23.  The individuals signing this Agreement on behalf of UIC represent and warrant that they are authorized by UIC to execute this Agreement. The individuals signing this Agreement on behalf of Relator represent and warrant that they are authorized by Relator to execute this Agreement. The United States' and the State of Illinois' signatories represent that they are signing this Agreement in their official capacities and that they are authorized to execute this Agreement.

24.  This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same agreement.

25.  This Agreement is binding on UIC's and on Relator's successors, transferees, heirs, and assigns.

26.  All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

27.  This Agreement is effective on the date of signature of the last signatory to the Agreement ("Effective Date"). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

THE UNITED STATES OF AMERICA

Dated:  11|17|03

PATRICK J. FITZGERALD
United States Attorney

By:  *Lisa Noller*

LISA M. NOLLER
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-5314

Page 20 of 26

Dated: 11/12/03

By: _Larry J Goldberg_
LARRY J. GOLDBERG
Assistant Inspector General for Legal
Affairs
Office of Counsel to the Inspector
General
Office of Inspector General
United States Department of Health
and Human Services
330 Independence Avenue, S.W.
Room 5527, Cohen Building
Washington, DC 20201

FOR THE STATE OF ILLINOIS

LISA MADIGAN
ILLINOIS ATTORNEY GENERAL

DATED: 11/14/03

By:     Timothy D. Nimrod

Assistant Attorney General
100 W. Randolph, 12th Floor
Chicago, IL 60601
Telephone: 312/814-3918
Fax: 312/814-5366

Illinois Department of Public Aid

## THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS - DEFENDANT

Dated: *Nov. 14, 2003*

THE BOARD OF TRUSTEES OF
THE UNIVERSITY OF ILLINOIS

By: *Stph Kregg*
Its: _____ Comptroller

ATTESTED to by:

*Michele M. Thompson*

Secretary of the Board of Trustees

Dated:   "|17|03

_Robin Potter_

ROBIN B. POTTER
Robin Potter & Associates
30 North LaSalle Street
Suite 1724
Chicago, Illinois 60602

Page 24 of 26

Dated: 11/14/03

RONALD E. OSMAN
Ronald E. Osman & Associates
1603 West Kimmel
Marion, Illinois 62959

Dated: 11/14/03

LAURIE J. WASSERMAN
9933 Lawler Avenue, Suite 122
Skokie, Illinois 60077-3703

# APPENDIX A

# DECLARATION

This declarant is currently William Chamberlin, M.D., Chief Compliance Officer of the University of Illinois Medical Center at Chicago ("UIMCC"), and has personal knowledge of the facts included herein. The following describes the compliance program currently in place at UIMCC.

1. UIMCC has in place a Corporate Compliance Program ("Program"), including a Compliance Officer and a Compliance Committee made up of members of senior management necessary to support the Compliance Officer in fulfilling his/her responsibilities under the Program (e.g., Deputy Vice Chancellor, Chief Financial Officer, Director of Audits, Medical Director UIMCC, and Human Resources Director UIC Hospital). The annual operating budget for the Program is attached hereto as Exhibit A, and UIMCC shall sustain the total level of funding reflected therein for three (3) years subsequent to the signature date hereof.

2. UIMCC has in place a Code of Conduct that includes UIMCC's commitment to full compliance with all Federal health care program requirements, including its commitment to prepare and submit accurate claims consistent with such requirements. UIMCC requires all of its personnel to comply with all Federal health care program requirements and with the Policies and Procedures described in Paragraph 3 below. UIMCC's personnel have the right to use the Disclosure Program described in Paragraph 6 below. UIMCC commits to non-retaliation and to maintain, as appropriate, confidentiality and anonymity with respect to such disclosures. UIMCC also requires each officer, director, and employee to receive training as part of its Compliance Training Program as further detailed in Paragraph 4.

3. UIMCC has in place Policies and Procedures that address the Federal health care program (defined at 42 U.S.C. § 1320a-7b(f)) reimbursement issues that are relevant to UIMCC's operations. Such policies and procedures include, but are not limited to, the following policies and procedures: (1) ensuring accurate bills and claims are submitted to Federal health care programs for reimbursement and that all contacts are in compliance with the Federal health care program statutes, regulations, and policies; (2) proper and timely documentation of professional services; (3) proper inpatient and outpatient coding that reflects current reimbursement principles; (4) Medicare - medical necessity; (5) Medicare Part B claims; (6) Medicare billing - outpatient services rendered in connection with inpatient stay; (7) submission of claims for laboratory services; (8) cost reports - federal program requirements and private payer plans; (9) appropriate reporting to Medicare; (10) appropriate reporting mechanisms for the compliance office - employee hotline; (11) employee discipline - academic and non-academic professionals, tenured

and non-tenured faculty; and union members; ongoing coding compliance training and education; (12) internal auditing and monitoring; (13) screening of excluded providers; (14) responding to detected offenses and corrective action initiatives; (15) responding to government investigations; (16) department-specific compliance plans; (17) code of conduct and ethics; and (18) confidentiality - patient information. Policies and procedures are made available to all relevant personnel through UIMCC's new employee orientation, public folders on the intranet, NetLearning compliance training, compliance representatives in each department or by other means as appropriate.

4. UIMCC requires its officers, directors, employees and medical staff to attend new employee orientation, as well as annual retraining on hospital policies and regulations and annually certify that he or she has received, read, understood and will abide by the Code of Conduct. Certain UIMCC personnel are involved in various risk areas, such as billing, coding, Federal health benefits programs, patient confidentiality, and other areas of risk as identified by UIMCC. Therefore, UIMCC requires ongoing training using various training methods such as formal classroom training, video conferencing, computer based training, newsletters ad that which is set forth in the Compliance Training Program.

5. UIMCC has in place an internal compliance audit department that performs periodic audits to monitor UIMCC's compliance with applicable Federal health care program requirements, including focused audits relating to specific risks areas identified by OIG-HHS or through the Program. UIMCC has one full-time qualified employee and three part-time qualified employees who are assigned to work on Program matters. UIMCC's organ transplant program is reviewed annually by the United Network for Organ Sharing to ensure compliance with applicable federal and network regulations relating to organ transplants.

6. UIMCC maintains a Disclosure Program that includes a mechanism (e.g., a toll-free compliance telephone line) to enable individuals to disclose, to the Compliance Officer or some other person who is not in the disclosing individual's chain of command, any identified issues or questions associated with UIMCC's policies, conduct, practices, or procedures with respect to a Federal health care program believed by the individual to be a potential violation of criminal, civil, or administrative law. UIMCC publicizes the existence of the disclosure mechanism to all personnel.

The Disclosure Program emphasizes a non-retribution, non-retaliation policy, and includes a reporting mechanism for anonymous communications for which appropriate confidentiality is maintained. Each disclosure is reviewed by the Compliance Officer (or designee) who either investigates the disclosure or refers the disclosure to the relevant department or manager for follow up and any appropriate corrective action.

The Compliance Officer (or designee) maintains a disclosure log, which includes a record and summary of each disclosure received (whether anonymous or not), the status of UIMCC's internal review of the allegations, and any corrective action taken in response to the internal review.

7. UIMCC has in place a policy and procedure for screening all prospective officers, directors, employees, medical staff, contractors and agents to ensure that they are not excluded from Medicare, Medicaid, or Federal health care programs by: (a) requiring such persons to disclosure whether they are excluded; and (b) appropriately querying the General Services Administrations List of Parties Excluded from Federal Programs (available through the Internet at http://epls.arnet.gov) and the HHS/OIG List of Excluded Individuals/Entities (available through the Internet at http://oig.hhs.gov ). (these lists shall hereinafter be referred to as the "Exclusion Lists"). UIMCC also performs annual screening of its officers, directors, employees, medical staff members, contractors, and agents against the Exclusion Lists and requires all officers, directors, employees, medical staff members, contractors and agents to disclose immediately any exclusion from Medicare, Medicaid, or other federal health care programs. UIMCC also has a policy in place that, if UIMCC has actual notice that any officers, directors, employees, medical staff members, contractors and agents has become an excluded individual, UIMCC shall remove such person from responsibility for, or involvement with, UIMCC's business operations related to the Federal health care program and shall remove such person from any position for which the person's compensation or items or services furnished, ordered, or prescribed by the person are paid in whole or in part, directly or indirectly, by Federal health care programs or otherwise with Federal funds, at least until such time as the person is reinstated into participation in the Federal health care programs. (Nothing in this Declaration affects the responsibility of UIMCC to refrain from billing Federal health care programs for items and services furnished, ordered, or prescribed by excluded individuals or UIMCC's liability for any overpayments received by UIMCC as a result of billing any Federal health care program for such items and services.)

The undersigned signatory represents and warrants that he/she is authorized to execute this declaration on behalf of UIMCC.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 14 day of Nov, 2003 .

_UH Chamberlin MD_

University of Illinois Medical Center at Chicago
William Chamberlin, M.D.
Chief Compliance Officer

## APPENDIX B

## BREACH AND DEFAULT PROVISIONS

The University of Illinois (UIC) is expected to fully and timely comply with all of the Integrity Requirements set forth in Paragraph 9 of the Settlement Agreement.

A. <u>Stipulated Penalties for Failure to Comply with Certain Obligations</u>. As a contractual remedy, UIC and OIG-HHS hereby agree that failure to comply with the Integrity Requirements set forth in this Agreement may lead to the imposition of the following monetary penalties (hereinafter referred to as "Stipulated Penalties") in accordance with the following provisions.

1. A Stipulated Penalty of $2,500 (which shall begin to accrue on the day after the date the obligation became due) for each day UIC fails to have in place any of the provisions described in the Declaration attached to this Agreement as Appendix A:

    a. a Compliance Officer and Compliance Committee;

    b. a written Code of Conduct;

    c. written Policies and Procedures;

    d. annual program training;

    e. internal and external compliance monitoring and audit provisions; and

    f. a Disclosure Program.

2. A Stipulated Penalty of $2,500 (which shall begin to accrue on the day after the date the obligation became due) for each day UIC fails to meet any of the deadlines for the submission of annual reports to OIG-HHS as described in Paragraph 9 of this Agreement.

3. A Stipulated Penalty of $2,000 (which shall begin to accrue on the date the failure to comply began) for each day UIC has as an officer or director an excluded individual, or for each day UIC employs or contracts with, has as an agent, or grants staff privileges to an excluded individual and that person: (a) has responsibility for, or involvement with UIC's business operations related to the Federal health care programs; or (b) is in a position for which the person's salary or the items or services rendered, ordered, or prescribed by the person are paid in whole or part, directly or indirectly, by Federal health

care programs or otherwise with Federal funds. If the excluded individual is a health care practitioner with staff privileges at UIC, then the Stipulated Penalty shall accrue for each day that the excluded individual furnished, ordered, or prescribed any items or services at UIC that were payable in whole or in part by any Federal health care program. The Stipulated Penalty described in this Paragraph A.3 shall not be demanded for any time period during which UIC can demonstrate that it did not discover the person's exclusion or other ineligibility after making a reasonable inquiry (as described in Paragraph 7 of the Declaration) as to the status of the person.

4. A Stipulated Penalty of $1,500 for each day UIC fails to grant access to the information or documentation as required in Paragraph 9 of this Agreement. (This Stipulated Penalty shall begin to accrue on the date UIC fails to grant access.)

5. A Stipulated Penalty of $5,000 for each false certification submitted by or on behalf of UIC as part of its Annual Reports or otherwise required by this Agreement.

6. A Stipulated Penalty of $1,000 for each day UIC fails to comply fully and adequately with any Integrity Requirements of this Agreement. OIG-HHS shall provide notice to UIC stating the specific grounds for its determination that UIC has failed to comply fully and adequately with the Integrity Requirements at issue and steps UIC shall take to comply with the Integrity Requirements of this Agreement. (This Stipulated Penalty shall begin to accrue 10 days after UIC receives notice from OIG-HHS of the failure to comply.) A Stipulated Penalty as described in this Paragraph shall not be demanded for any violation for which OIG-HHS has sought a Stipulated Penalty under Paragraphs A. 1-5, above.

B. <u>Timely Written Requests for Extensions</u>. UIC may, in advance of the due date, submit a timely written request for an extension of time to perform any act or file any notification or report required by the Integrity Requirements of this Agreement. Notwithstanding any other provision in this Paragraph, if OIG-HHS grants the timely written request with respect to an act, notification, or report, Stipulated Penalties for failure to perform the act or file the notification or report shall not begin to accrue until one day after UIC fails to meet the revised deadline set by OIG-HHS. Notwithstanding any other provision in this Paragraph, if OIG-HHS denies such a timely written request, Stipulated Penalties for failure to perform the act or file the notification or report shall not begin to accrue until three business days after UIC receives OIG-HHS's written denial of such request or the original due date, whichever is later. A "timely written request" is defined as a request in writing received by OIG-HHS at least five business days prior to the date by which any act is due to be performed or any notification or report is due to be filed.

C. Payment of Stipulated Penalties.

1. *Demand Letter.* Upon a finding that UIC has failed to comply with any of the obligations described in Paragraph A and after determining that Stipulated Penalties are appropriate, OIG-HHS shall notify UIC of: (a) UIC's failure to comply; and (b) OIG-HHS's exercise of its contractual right to demand payment of the Stipulated Penalties (this notification is hereinafter referred to as the "Demand Letter").

2. *Response to Demand Letter.* Within 10 days after the receipt of the Demand Letter, UIC shall either: (a) cure the breach to OIG-HHS's satisfaction and pay the applicable Stipulated Penalties; or (b) request a hearing before an HHS administrative law judge ("ALJ") to dispute OIG-HHS's determination of noncompliance, pursuant to the agreed upon provisions set forth below in Paragraph E. In the event UIC elects to request an ALJ hearing, the Stipulated Penalties shall continue to accrue until UIC cures, to OIG-HHS's satisfaction, the alleged breach in dispute. Failure to respond to the Demand Letter in one of these two manners within the allowed time period shall be considered a Material Breach of the Integrity Requirements of this Agreement and shall be grounds for exclusion under Paragraph D, below.

3. *Form of Payment.* Payment of the Stipulated Penalties shall be made by certified or cashier's check, payable to: "Secretary of the Department of Health and Human Services," and submitted to OIG-HHS at the address set forth in Paragraph 9(f) of the Integrity Requirements.

4. *Independence from Material Breach Determination.* Except as set forth in Paragraph D.1.c, these provisions for payment of Stipulated Penalties shall not affect or otherwise set a standard for OIG-HHS's decision that UIC has materially breached the Integrity Requirements of this Agreement, which decision shall be made at OIG-HHS's discretion and shall be governed by the provisions in Paragraph D, below.

D. Exclusion for Material Breach of the Integrity Requirements of this Agreement.

1. *Definition of Material Breach.* A Material Breach of the Integrity Requirements of this Agreement means:

a. a failure by UIC to report a Reportable Event, take corrective action, and make the appropriate refunds, as required in Paragraph 9(c) of the Integrity Requirements;

b. a repeated or flagrant violation of the obligations under the Integrity

Page 3 of 6

Requirements of this Agreement, including, but not limited to, the obligations addressed in Paragraph A, above;

c. a failure to respond to a Demand Letter concerning the payment of Stipulated Penalties in accordance with Paragraph C, above.

2. *Notice of Material Breach and Intent to Exclude.* The parties agree that a Material Breach of the Integrity Requirements of this Agreement by UIC constitutes an independent basis for UIC's exclusion from participation in the Federal health care programs. Upon a determination by OIG-HHS that UIC has materially breached Integrity Requirements of this Agreement and that exclusion is the appropriate remedy, OIG-HHS shall notify UIC of: (a) UIC's Material Breach; and (b) OIG-HHS's intent to exercise its contractual right to impose exclusion (this notification is hereinafter referred to as the "Notice of Material Breach and Intent to Exclude").

3. *Opportunity to Cure.* UIC shall have 30 days from the date of receipt of the Notice of Material Breach and Intent to Exclude to demonstrate to OIG-HHS's satisfaction that:

a. UIC is in compliance with the Integrity Requirements of this Agreement cited by OIG-HHS as being the basis for the Material Breach;

b. the alleged Material Breach has been cured; or

c. the alleged Material Breach cannot be cured within the 30-day period, but that: (i) UIC has begun to take action to cure the Material Breach; (ii) UIC is pursuing such action with due diligence; and (iii) UIC has provided to OIG-HHS a reasonable timetable for curing the Material Breach.

4. *Exclusion Letter.* If, at the conclusion of the 30-day period, UIC fails to satisfy the requirements of Paragraph D.3, above, OIG-HHS may exclude UIC from participation in the Federal health care programs. OIG-HHS shall notify UIC in writing of its determination to exclude UIC (this letter shall be referred to hereinafter as the "Exclusion Letter"). Subject to the Dispute Resolution provisions in Paragraph E, below, the exclusion shall go into effect 30 days after the date of receipt of the Exclusion Letter. The exclusion shall have national effect and shall also apply to all other Federal procurement and nonprocurement programs. Reinstatement to program participation is not automatic. If, at the end of the period of exclusion, UIC wishes to apply for reinstatement, UIC shall submit

a written request for reinstatement in accordance with the provisions at 42 C.F.R. §§ 1001.3001-.3004.

E. Dispute Resolution

   1. *Review Rights.* Upon OIG-HHS's delivery to UIC of its Demand Letter or of its Exclusion Letter, and as an agreed-upon contractual remedy for the resolution of disputes arising under the Integrity Requirements of this Agreement, UIC shall be afforded certain review rights comparable to the ones that are provided in 42 U.S.C. § 1320a-7(f) and 42 C.F.R. Part 1005 as if they applied to the Stipulated Penalties or exclusion sought pursuant to the Integrity Requirements of this Agreement.   Specifically, OIG-HHS's determination to demand payment of Stipulated Penalties or to seek exclusion shall be subject to review by an HHS ALJ and, in the event of an appeal, the HHS Departmental Appeals Board ("DAB"), in a manner consistent with the provisions in 42 C.F.R. §§ 1005.2-1005.21.  Notwithstanding the language in 42 C.F.R. § 1005.2(c), the request for a hearing involving Stipulated Penalties shall be made within 10 days after receipt of the Demand Letter and the request for a hearing involving exclusion shall be made within 25 days after receipt of the Exclusion Letter.

   2. *Stipulated Penalties Review.* Notwithstanding any provision of Title 42 of the United States Code or Chapter 42 of the Code of Federal Regulations, the only issues in a proceeding for Stipulated Penalties under the Integrity Requirements of this Agreement shall be:  (a) whether UIC was in full and timely compliance the Integrity Requirements of this Agreement for which OIG-HHS demands payment; and (b) the period of noncompliance. UIC shall have the burden of proving its full and timely compliance and the steps taken to cure the noncompliance, if any.  OIG-HHS shall not have the right to appeal to the DAB an adverse ALJ decision related to Stipulated Penalties.  If the ALJ agrees with OIG-HHS with regard to a finding of a breach of the Integrity Requirements of this Agreement and orders UIC to pay Stipulated Penalties, such Stipulated Penalties shall become due and payable 20 days after the ALJ issues such a decision unless UIC requests review of the ALJ decision by the DAB.  If the ALJ decision is properly appealed to the DAB and the DAB upholds the determination of OIG-HHS, the Stipulated Penalties shall become due and payable 20 days after the DAB issues its decision.

   3. *Exclusion Review.* Notwithstanding any provision of Title 42 of the United States Code or Chapter 42 of the Code of Federal Regulations, the only issues in a proceeding for exclusion based on a Material Breach of the Integrity Requirements of this Agreement shall be:

      a. whether UIC was in Material Breach of the Integrity Requirements

Page 5 of 6

of this Agreement;

b. whether such breach was continuing on the date of the Exclusion Letter; and

c. whether the alleged Material Breach could not have been cured within the 30-day period, but that: (i) UIC had begun to take action to cure the Material Breach within that period; (ii) UIC has pursued and is pursuing such action with due diligence; and (iii) UIC provided to OIG-HHS within that period a reasonable timetable for curing the Material Breach and UIC has followed the timetable.

For purposes of the exclusion herein, exclusion shall take effect only after an ALJ decision favorable to OIG-HHS, or, if the ALJ rules for UIC, only after a DAB decision in favor of OIG-HHS. UIC's election of its contractual right to appeal to the DAB shall not abrogate OIG-HHS's authority to exclude UIC upon the issuance of an ALJ's decision in favor of OIG-HHS. If the ALJ sustains the determination of OIG-HHS and determines that exclusion is authorized, such exclusion shall take effect 20 days after the ALJ issues such a decision, notwithstanding that UIC may request review of the ALJ decision by the DAB. If the DAB finds in favor of OIG-HHS after an ALJ decision adverse to OIG-HHS, the exclusion shall take effect 20 days after the DAB decision. UIC shall waive its right to any notice of such an exclusion if a decision upholding the exclusion is rendered by the ALJ or DAB. If the DAB finds in favor of UIC, UIC shall be reinstated effective on the date of the original exclusion.

4. *Finality of Decision.* The review by an ALJ or DAB provided for above shall not be considered to be an appeal right arising under any statutes or regulations. Consequently, the parties to the Integrity Requirements of this Agreement agree that the DAB's decision (or the ALJ's decision if not appealed) shall be considered final for all purposes under the Integrity Requirements of this Agreement.

APPENDIX C

# OVERPAYMENT REFUND

---

### TO BE COMPLETED BY MEDICARE CONTRACTOR

Date:_____

Contractor Deposit Control #_____    Date of Deposit: _____

Contractor  Contact  Name:_____Phone #_____

C      o      n      t      r      a      c      t      o      r

Address:_____

Contractor Fax:_____

---

### TO BE COMPLETED BY PROVIDER/PHYSICIAN/SUPPLIER

*Please complete and forward to Medicare Contractor. This form, or a similar document containing the following information, should accompany every voluntary refund so that receipt of check is properly recorded and applied.*

PROVIDER/PHYSICIAN/SUPPLIER NAME_____

ADDRESS_____

PROVIDER/PHYSICIAN/SUPPLIER  #_____CHECK NUMBER#_____

CONTACT  PERSON:_____PHONE #_____ AMOUNT OF CHECK $_____ CHECK DATE_____

### REFUND INFORMATION

For each Claim, provide the following:

Patient  Name_____HIC #_____

Medicare  Claim  Number_____Claim  Amount  Refunded $_____

Reason Code for Claim Adjustment:_____ (Select reason code from list below.  Use one reason per claim)

*(Please list all claim numbers involved. Attach separate sheet, if necessary)*

*Note:  If Specific Patient/HIC/Claim #/Claim Amount data not available for all claims due to Statistical Sampling, please  indicate  methodology  and  formula  used  to  determine  amount  and  reason  for overpayment:*_____

For Institutional Facilities Only:

Cost Report Year(s) _____

(If multiple cost report years are involved, provide a breakdown by amount and corresponding cost report year.)

For OIG Reporting Requirements:

Do you have a Corporate Integrity Agreement with OIG? _____ Yes _____No

---

Reason Codes:

| Billing/Clerical Error | MSP/Other Payer Involvement | Miscellaneous |
|---|---|---|
| 01 - Corrected Date of Service | 08 - MSP Group Health Plan Insurance | 13 - Insufficient Documentation |
| 02 - Duplicate | 09 - MSP No Fault Insurance | 14 - Patient Enrolled in an HMO |
| 03 - Corrected CPT Code | 10 - MSP Liability Insurance | 15 - Services Not Rendered |
| 04 - Not Our Patient(s) | 11 - MSP, Workers Comp.(Including | 16 - Medical Necessity |
| 05 - Modifier Added/Removed |     Black Lung | 17 - Other (Please Specify) |
| 06 - Billed in Error | 12 - Veterans Administration | _____ |
| 07 - Corrected CPT Code | | |

## Certificate of Service

I, Lisa M. Noller, an attorney, certify that I caused a copy of the Settlement Agreement Between Plaintiffs and the Board of Trustees of the University of Illinois to be served on the following, by hand delivery, on this 17th day of November, 2003:

Anne MacArthur (**via Federal Express**)
Office of Counsel to the Inspector General, Office of Inspector General
United States Department of Health and Human Services
330 Independence Avenue, S.W.
Room 5527, Cohen Building
Washington, DC 20201

Timothy D. Nimrod
Assistant Attorney General
100 W. Randolph, 12th Floor
Chicago, IL 60601

Patrick S. Coffey
Gardner, Carton & Douglas
191 N. Wacker Drive, Suite 3700
Chicago, Illinois 60606-1698

Robin B. Potter
Robin Potter & Associates
30 North LaSalle Street, Suite 1724
Chicago, Illinois 60602

Ronald E. Osman
Ronald E. Osman & Associates
1603 West Kimmel
Marion, Illinois 62959

Laurie J. Wasserman
9933 Lawler Avenue, Suite 122
Skokie, Illinois 60077-3703

_Lisa Noller_
Lisa M. Noller